## A00A0940. THE STATE v. MALLARD.
## A00A0941. THE STATE v. LONGINO.
### (541 SE2d 46)

BLACKBURN, Presiding Judge.

In related cases, the State appeals the trial court's grant of defendants Robert Jacob Mallard's and Anthony Longino's motions to suppress marijuana discovered following the stop of their car shortly after they had left a residence on which a search warrant was about to be executed. We affirm the ruling of the trial court.

The standard of review here is: "On reviewing a trial court's ruling on a motion to suppress, evidence is construed most favorably to uphold the findings and judgment and the trial court's findings on disputed facts and credibility must be accepted unless clearly erroneous." (Punctuation omitted.) *Rider v. State*.[1]

Where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo review. *State v. Becker*.[2]

So viewed, the evidence at the motion to suppress hearing showed that the Appalachian Drug Task Force was preparing to execute a search warrant on the residence of Ron Cantrell. Officer Robin McClure, one of the officers executing a search warrant on a different premises from the subject house, testified that she received a call that a maroon Honda, containing two unidentified males, had just left the Cantrell residence, prior to the execution of the search warrant for those premises. She stopped the Honda approximately a half-mile from the Cantrell residence, for the sole purpose of determining if Cantrell, the owner of the premises to be searched, was in the vehicle.

McClure quickly determined that Cantrell was not in the car after checking the occupants' driver's licenses. After concluding the purpose of the stop, Officer McClure asked the occupants if they had

---

[1] *Rider v. State*, 222 Ga. App. 602 (475 SE2d 655) (1996).
[2] *State v. Becker*, 240 Ga. App. 267 (523 SE2d 98) (1999).

any marijuana in the vehicle. McClure testified that the officers had information from a confidential informant that drug transactions had been taking place at the Cantrell home. The purpose of the warrant was to search the Cantrell home for marijuana. It is undisputed that the police had no information which implicated the two defendants in any criminal wrongdoing, or created an articulable suspicion, or probable cause as to them at the time their vehicle was stopped. The officers quickly determined that Cantrell was not in the vehicle. They then proceeded to question the defendants. The defendants were asked if there was any marijuana in the vehicle, and each produced a baggie of marijuana from their pocket.

Mallard and Longino were then arrested and ultimately indicted for possession of marijuana with intent to distribute, under OCGA § 16-13-30 (j) (1).[3] As each of their cases arises out of the same facts and presents the same issues of law, they will be consolidated for purposes of appellate review. Each of the defendants entered a plea of not guilty in October 1998, and each filed a motion to suppress in December 1998. The cases were consolidated, and a joint hearing was held on defendants' motions to suppress on April 19, 1999. The trial court's order granting defendants' motions to suppress was filed September 27, 1999. The State's notice of appeal from this ruling was filed October 6, 1999.

The defendants contended that the officers had no authority to stop the vehicle in which they were riding. They further contended that even if the stop was authorized, the police exceeded that authority in further detaining and questioning the defendants after they determined that neither of them was Cantrell. The State relies upon *Fritzius v. State*,[4] which in turn, relies upon *Michigan v. Summers*,[5] as authority for the police conduct. In *Michigan v. Summers*, the U. S. Supreme Court held, inter alia:

> If the evidence that a citizen's residence is harboring contraband is sufficient to persuade a judicial officer that an invasion of the citizen's privacy is justified, it is constitutionally reasonable to require that citizen to remain while officers of the law execute a valid warrant to search his home. Thus, for Fourth Amendment purposes, we hold that a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain occupants of the premises while a proper search is conducted.

(Footnotes omitted.) Id. at 704-705.

---

[3] Other misdemeanor charges, not herein relevant, were also filed against the defendants.

[4] *Fritzius v. State*, 225 Ga. App. 642 (484 SE2d 743) (1997).

[5] *Michigan v. Summers*, 452 U. S. 692 (101 SC 2587, 69 LE2d 340) (1981).

Based on the facts in this case, the trial court held, inter alia:

In *Fritzius*, the police were preparing to execute a search warrant on the home of one Henry Fallow. Prior to the arrival of the officers who were to execute the search, another officer who had been conducting surveillance of the dwelling to be searched saw two people leave the dwelling, get into a vehicle and drive off. The surveillance officer requested another officer (Beveridge) to see if one of the people in the car was Fallow. Beveridge stopped the vehicle approximately two miles from the dwelling.

Beveridge asked the driver for a driver's license and proof of insurance. The driver said that he had lost his wallet and had no license. Upon further questioning, the driver (Fallow) admitted to possessing two marijuana cigarettes. Fritzius was told to get out of the vehicle. He denied possessing any drugs and consented to a search of his person which produced nothing. Fritzius refused Beveridge's request to search the vehicle, so Beveridge brought a drug [dog] out to do an "odor search." The dog alerted to the car door. Methamphetamines was [sic] found under the floor mat where Fritzius had been sitting.

The *Fritzius* case extends *Summer*[s] by permitting the stopping of individuals who are not on the premises at the time the search began, but to allow people stopped some distance from the scene. [sic] In *Summer*[s] the [U. S.] Supreme Court relied upon the fact that a warrant had been issued for the search of the house; that the "*(t)ype of detention imposed here* (emphasis supplied) is not likely to be exploited by the officer or unduly prolonged in order to gain more information" and that the stigma is reduced as the detention was in the house of that person. The Court found legal justification in the prevention of flight and of minimizing risk to law enforcement officers. The Court reiterated several times the fact that the person detained would *remain* in his home while it was being searched; thus, the holding that for Fourth Amendment purposes "a warrant to search for contraband . . . implicitly carries with at [sic] the limited authority to detain the occupants of the premises while a proper search is conducted."

In *Fritzius*, the Court said that "(i)t would appear reasonable within the meaning of the Fourth and Fourteenth Amendments for a police officer, knowing that certain persons and premises were the subject of the *immediate* execution of a search warrant, to detain temporarily a vehicle con-

taining occupants who had *just departed* the premises to be searched in order to identify the occupants and to see if one of them was a person named in the warrant" (emphasis in original). In that case, the person whose property was to be searched was in fact in the car. In this case, the person whose property was to be searched was not in the car. Law enforcement had identified the occupants and had found neither was Ron Cantrell. These facts exceed the long grasp of *Fritzius* and far exceed the scope of *Summers*. . . .

This Court holds that the stop is not authorized under the Fourth Amendment nor Article I, Section I, Paragraph XIII of the Georgia Constitution, or even if authorized, the continued seizure and subsequent search exceeded the scope of the detention exceeded [sic] "its underlying justification" which was to see if either person were Ron Cantrell.

(Citations omitted.) Motion to Suppress Order, filed September 27, 1999.

We note that *Fritzius* involved the trial court's denial of defendant's motion to suppress, while this case involves the grant of defendants' motions to suppress. Given this Court's standard of review, the evidence in *Fritzius* was construed in favor of the State, while in this case it is construed in favor of the defendants. "Just as we viewed the evidence in that case[, *State v. Crank,*][6] to favor [the defendant], in this case we must view it to favor the State." *Fritzius*, supra at 646. We also note, that in *Fritzius*, Fallow, the occupant of the residence to be searched, was in fact in the stopped vehicle, while in the present case, Cantrell, the occupant of the residence to be searched, was not in the stopped vehicle. While the police had probable cause to search the residence in each case based upon the search warrants, there was no basis to believe that either Mallard or Longino was involved in criminal activity at the time of the stop.

*Michigan v. Summers*, supra, the case upon which *Fritzius* was based, addressed only federal constitutional protections under the Fourth Amendment to the U. S. Constitution. In *Summers*, police officers were about to execute a search warrant for contraband on Summers' residence when he came out the front door and locked it. The officers required Summers to reenter the residence with them and forced him to remain in the house until the search was completed, and evidence establishing probable cause to arrest him was found. The U. S. Supreme Court held that a warrant to search for contraband founded on probable cause carried with it the limited

---

[6] *State v. Crank*, 212 Ga. App. 246 (441 SE2d 531) (1994).

authority to detain the occupants of the premises while a proper search of the premises was conducted and reversed the holding of the Supreme Court of Michigan.

In *Garmon v. State*,[7] our Supreme Court affirmed *Garmon v. State*,[8] a case involving the stop of a vehicle in conjunction with the execution of a warrant to search a dwelling for contraband. This Court relied upon *Summers*, supra, in upholding the constitutionality of the vehicle stop. On grant of certiorari, our Supreme Court declined to adopt the *Summers* analysis applied by this Court and instead applied a *Terry v. Ohio*[9] standard in affirming the case. In *Garmon*, 271 Ga. 673, the investigative stop was justified under *Terry* because there were some objective manifestations that the occupant in the vehicle leaving the search location was engaged in criminal activity. The Supreme Court observed that the existence of the search warrant was a factor to consider in analyzing the validity of the stop. The Court noted that the driver and his companion were leaving a residence suspected as a location for dealing in controlled substances and an illegal sports betting operation, which was operating *at that time* since it was a big football weekend. Thus, "it was reasonable to believe that persons then at the residence might be . . . involved in criminal activity." *Garmon*, 271 Ga. at 677. The Supreme Court further noted that the truck was owned by a known methamphetamine dealer; that the officers had overheard telephone conversations discussing gambling and a drug deal; and that the officers had independent information which supported a reasonable belief that the men in the truck were involved in the operation. This totality of the circumstances provided an articulable suspicion to justify the stop.

In the present case, the officers had no such information. There was no conduct by either Longino or Mallard to connect them to the suspected drug activity. Neither man lived at the residence, and the car was not believed to be owned by Cantrell. In fact, the officers had no specific information about the car or its occupants. The officers had not observed any violations of the law. See, e.g., *Smith v. State*;[10] *Brantley v. State*.[11] The sole basis for stopping the car was to see who was inside. That reason, standing alone, cannot justify a *Terry* stop.

The present case arises out of the execution of a search warrant for contraband at Cantrell's premises and the detention and arrest of persons in connection therewith. Georgia statutory law controlling

---

[7] *Garmon v. State*, 271 Ga. 673 (524 SE2d 211) (1999).
[8] *Garmon v. State*, 235 Ga. App. 671 (510 SE2d 350) (1998).
[9] *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).
[10] *Smith v. State*, 240 Ga. App. 150 (522 SE2d 744) (1999).
[11] *Brantley v. State*, 226 Ga. App. 872 (1) (487 SE2d 412) (1997).

the State's conduct in the execution of a search warrant under OCGA § 17-5-28 was not raised in *Fritzius* or *Garmon*, 271 Ga. 673. Under Georgia statutory law, the State has a limited authority to act in the execution of a search warrant, as provided in OCGA § 17-5-28, which states:

> In the execution of the search warrant the officer executing the same may reasonably detain or search any person in the place at the time: (1) To protect himself from attack; or (2) To prevent the disposal or concealment of any instruments, articles, or things particularly described in the search warrant.

The inclusion of language in the warrant authorizing the search of "any persons present" on the premises does not broaden the powers of the searching authorities beyond the limited terms of this section. *State v. Holmes*.[12] Searches pursuant to OCGA § 17-5-28 are valid only if the State can articulate particular facts from which the police reasonably inferred that the individual searched was armed and dangerous or was concealing things described in the search warrant. *Clark v. State*.[13] Where the police had no particular reason to suspect that the defendant was armed or was concealing items described in a search warrant, any search was illegal and the contraband should have been suppressed. Id. OCGA § 17-5-28 narrowly limits the authority of the State to search persons in connection with the execution of a search warrant to those who are on the premises and who meet the criteria described therein, absent facts which would have authorized a warrantless search. Nothing in *Fritzius*, supra, or *Summers*, supra, requires any other result. OCGA § 17-5-28 was not raised in *Fritzius*, and, unlike the present case, both *Fritzius* and *Summers* involved the seizure of the named occupant of the premises to be searched.

OCGA § 17-5-30 provides for the suppression of evidence illegally seized under OCGA § 17-5-28 during the execution of a search warrant. In *Gary v. State*,[14] our Supreme Court addressed for the first time whether the "good faith" exception to the exclusionary rule enunciated in *United States v. Leon*[15] is applicable as a matter of state law in Georgia. While the exclusionary rule had been applied in federal prosecutions since 1914, under *Weeks v. United States*,[16] it

---

[12] *State v. Holmes*, 240 Ga. App. 332 (525 SE2d 698) (1999).
[13] *Clark v. State*, 235 Ga. App. 569 (510 SE2d 319) (1998).
[14] *Gary v. State*, 262 Ga. 573 (422 SE2d 426) (1992).
[15] *United States v. Leon*, 468 U. S. 897 (104 SC 3405, 82 LE2d 677) (1984).
[16] *Weeks v. United States*, 232 U. S. 383 (34 SC 341, 58 LE 652) (1914).

was not until *Mapp v. Ohio*,[17] in 1961, that the U. S. Supreme Court determined that the sanction of exclusion was enforceable against the states through the operation of the Fourth and Fourteenth Amendments to the U. S. Constitution.

In *Leon*, the U. S. Supreme Court modified the judicially created exclusionary rule to permit the introduction of evidence obtained by officers reasonably relying on a warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause. In *Gary*, supra at 574, our Supreme Court concluded that Georgia law precludes adoption of the "good-faith exception" to the exclusionary rule.

In *Gary*, supra at 574, our Supreme Court held, inter alia:

> "(A) [s]tate is free as a matter of its own law to impose greater restrictions on police activity than those (the Supreme) Court holds to be necessary upon federal constitutional standards." *Oregon v. Hass*.[18] Thus, "the State (has) power to impose higher standards on searches and seizures than required by the Federal Constitution if it chooses to do so." *Cooper v. California*.[19] By passage in 1966 of an act "to provide for searches and seizures and for suppression of evidence illegally seized" (Ga. L. 1966, p. 567), the State of Georgia has chosen to impose greater requirements upon its law enforcement officers than that required by the United States Constitution, as interpreted by the U. S. Supreme Court."

Our Supreme Court recognized in *Gary*, supra, that the *Leon* good faith exception was a modification by the U. S. Supreme Court of a judicially created exclusionary rule, while the Georgia exclusionary rule resulted from the exercise by the Georgia legislature of its authority to legislate under the Georgia Constitution. Our Supreme Court recognized that the legislature enacted OCGA § 17-5-30 to protect against governmental disregard for constitutionally protected rights by requiring the State to respect the probable cause requirements of the Georgia Constitution, Art. I, Sec. I, Par. XIII.

In *Gary*, our Supreme Court went on to say: "In light of the unequivocal language of OCGA § 17-5-30, infusion of the *Leon* good-faith exception into the statute would be tantamount to judicial legislation. We decline to enter the realm of the legislature." (Footnote omitted.) Id. at 575.

---

[17] *Mapp v. Ohio*, 367 U. S. 643, 655 (81 SC 1684, 6 LE2d 1081) (1961).
[18] *Oregon v. Hass*, 420 U. S. 714, 719 (95 SC 1215, 43 LE2d 570) (1975).
[19] *Cooper v. California*, 386 U. S. 58, 62 (87 SC 788, 17 LE2d 730) (1967).

OCGA § 17-5-30 authorizes a motion to suppress any evidence illegally seized where the State cannot establish that its incriminating evidence is admissible. *State v. Johnston*.[20] It is clear that under Georgia statutory law, the State has no authority to seize or search a nonoccupant of the premises to be searched, who is not on the premises at the time of the search, absent probable cause for a warrantless search. OCGA § 17-5-28 does not limit the officer's right to search persons as to whom probable cause for a warrantless search exists. See *Travis v. State*;[21] *Wallace v. State*.[22]

We now address whether or not the police had probable cause to stop the defendants, pursuant to *Terry v. Ohio*, supra. The only reason the police gave for stopping the defendants in connection with the execution of a search warrant on the premises of Cantrell was to determine whether or not he was in the defendants' vehicle. Such basis is not one of the two reasons for detention of a nonoccupant of the premises to be searched under OCGA § 17-5-28, absent probable cause. *Durden v. State*[23] held that, as to arrest warrants, holding dual inquiries under federal and state law serves no useful purpose and only complicates the law in an area that needs to be readily understood by law enforcement. *Daniel v. State*,[24] following *Durden*, held that for purposes of searching a vehicle incident to an arrest, the state rule is the same as the federal rule. In neither of these cases was the issue of the statutory protections of OCGA § 17-5-28 or § 17-5-30 involved, raised, or addressed. Each addressed only federal and Georgia *constitutional* standards, not Georgia statutory law, as addressed by our Supreme Court in *Gary*, supra, and they do not control the present case.

We will follow our Supreme Court's approach in *Garmon*, 271 Ga. 673, supra, and apply a *Terry* analysis. In *Garmon*, 271 Ga. 673, our Supreme Court held, inter alia:

> under the totality of the circumstances, the investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity. [*Postell v. State*],[25] citing *United States v. Cortez*.[26] Such articulable suspicion that the law has been or is about to be violated is "less than probable cause, but greater than

---

[20] *State v. Johnston*, 160 Ga. App. 71 (286 SE2d 47) (1981).
[21] *Travis v. State*, 192 Ga. App. 695 (385 SE2d 779) (1989).
[22] *Wallace v. State*, 131 Ga. App. 204 (205 SE2d 523) (1974).
[23] *Durden v. State*, 250 Ga. 325, 327 (297 SE2d 237) (1982).
[24] *Daniel v. State*, 199 Ga. App. 180, 181-182 (404 SE2d 466) (1991).
[25] *Postell v. State*, 264 Ga. 249 (443 SE2d 628) (1994).
[26] *United States v. Cortez*, 449 U. S. 411, 417 (101 SC 690, 66 LE2d 621) (1981).

mere caprice." *McGaughey v. State.*[27] What is necessary is a founded suspicion, some basis from which the court can determine that the detention was not arbitrary or harassing. *Johnson v. State.*[28] Thus, "in cases where there are some reasonable articulable grounds for suspicion, the state's interest in the maintenance of community peace and security outweigh[s] the momentary inconvenience and indignity of investigatory detention." *Brisbane v. State.*[29]

*Garmon*, 271 Ga. at 676.

Here, the police had no specific articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct by these defendants and thus could not meet the requirements of *Terry*, supra. If one is unlawfully seized, the fact that the discovery of contraband results from such seizure will not render the seizure legal. *Willis v. State.*[30] Under the facts of this case, we cannot say that the trial court erred in granting defendants' motions to suppress.

*Judgments affirmed. Eldridge and Barnes, JJ., concur.*

DECIDED OCTOBER 13, 2000.

*N. Stanley Gunter, District Attorney, Lynn Akeley-Alderman, Assistant District Attorney,* for appellant.

*Valpey & Walker, Gregory W. Valpey, Leonard C. Parks, Jr.,* for appellees.

[27] *McGaughey v. State*, 222 Ga. App. 477, 479 (474 SE2d 676) (1996).
[28] *Johnson v. State*, 230 Ga. App. 535, 537 (1) (496 SE2d 785) (1998).
[29] *Brisbane v. State*, 233 Ga. 339, 343 (211 SE2d 294) (1974).
[30] *Willis v. State*, 122 Ga. App. 455 (177 SE2d 487) (1970).