A00A1801. BELL v. THE STATE.
(546 SE2d 34)

JOHNSON, Presiding Judge.

After a bench trial, Antonio Bell was found guilty of possession of marijuana with intent to distribute and possession of a firearm by a convicted felon. He appeals from the convictions, contending the trial court erred in denying his motion to suppress evidence found following a traffic stop. Bell, who was stopped because he and his passenger were not wearing seat belts, argues that the investigative detention which followed the traffic stop exceeded the permissible scope of the stop. We disagree and affirm.

On review of a motion to suppress, we construe the evidence most favorably to uphold the trial court's ruling.[1] The trial court's application of the law to undisputed facts is subject to de novo review.[2]

The evidence shows that a DeKalb County police officer was on patrol when he saw Bell drive his car out of the parking lot of an apartment complex. The officer noticed that Bell and his front seat

---

[1] *State v. Winnie*, 242 Ga. App. 228, 229 (529 SE2d 215) (2000).
[2] Id.

passenger were not wearing seat belts, so he activated his car's blue lights. Bell pulled over and stopped.

The officer approached the car and asked Bell for his driver's license and proof of insurance. Bell handed him a valid license and proof of insurance. Bell asked the officer why he stopped him. The officer replied that he stopped Bell because he and his passenger were not wearing seat belts. Bell apologized for not wearing a seat belt. The officer testified that Bell was "perfectly cooperative," but that he was "a little bit nervous, his hand was shaking, [and] . . . instead of paying attention to me he was actually looking around the area."

The officer noticed that Bell's driver's license indicated he was from Macon. He asked Bell if he still lived in Macon. Bell stated that he did and then gratuitously stated that he came to Atlanta to drive his sister to college and that he had been visiting a friend in the apartment complex he had just left. The officer asked Bell for the name of the friend he was visiting. Instead of answering the question, Bell looked away from the officer and started looking around the area, as he had been doing throughout the stop. The officer noticed that the passenger "also seemed a little bit nervous," and that he was continuously rubbing his hands and looking around the area.

After the officer asked Bell for the name of the person he had visited, the passenger opened his door and started to get out. The officer told the passenger to stay in the car and close the door. The passenger remained in the car and pulled the door to a slightly open position, but never actually closed the door. The officer told him repeatedly to stay in the car.

The officer then noticed there were several garbage-type plastic bags in the backseat. Because of the "suspicious activity that was going on in the car," the officer asked Bell what was in the bags. Bell looked around again, grabbed a small plastic bag from next to his seat, held it up, and remarked, "It's candy." The officer asked Bell what was in the other bags. "[A]t that moment, [Bell] became relatively verbally combative" and asked the officer why he wanted to know what was in the bags. Bell asked the officer again why he was being stopped. The officer then ordered Bell out of the car, because Bell was "becoming repetitious about certain things and because of his activity." The officer added that he had Bell get out of the car "[b]ecause of his attitude," because "the vehicle was still running," and because the officer wanted "to control the situation . . . and get him away from the passenger" and from the driver's seat.

Bell got out of the car, walked to the rear of it, got back into the car, and then acted as if he was going to drive away. The officer pulled his service revolver from its holster, pointed it at Bell's tire, and told him he would shoot the tire if Bell tried to leave. Bell got out

of the car and stood on the sidewalk as instructed while the officer waited for a backup police unit. The passenger remained in Bell's car as directed by the police officer. The officer then retrieved a drug dog from his patrol car and told Bell that if he moved toward the officer, the dog would attack him. While they were waiting for other officers to arrive, Bell remarked "F—k this and the dog," walked to his car, grabbed one of the plastic bags from the backseat, and fled. The officer and his dog gave chase, but Bell managed to get away. As Bell ran, a small bag fell out of the large bag he was carrying. Moments later, police caught Bell and recovered the dropped bag and the larger bag. Both bags contained marijuana. Police also found another bag of marijuana in Bell's car and a handgun in the glove compartment of his car. Bell's companion fled before the officer returned to Bell's car. The entire stop, from the time the officer initially stopped Bell's car until the time Bell fled, lasted no more than five minutes.

OCGA § 40-8-76.1 (b) requires that persons riding in the front seat of a car wear seat belts. A law enforcement officer has probable cause to believe this statute is being violated if he has a clear and unobstructed view of a person not restrained as required by OCGA § 40-8-76.1 (b).[3]

Here, the officer testified that he had a clear and unobstructed view of the driver and the passenger and saw that they were not wearing seat belts. He therefore had probable cause to stop the car in order to investigate the seat belt violation.[4] The question, then, is what type of investigation was authorized.

The seat belt statute specifically provides that noncompliance with the seat belt law does not constitute probable cause for violation of any other Code section.[5] The legislature added the language concerning probable cause for violation of other Code sections to OCGA § 40-8-76.1 in order to prohibit a search of a person or a vehicle based solely on the failure of the front seat's occupant to wear a seat belt.[6]

The validity of an officer's investigative conduct upon making a stop is determined by balancing the extent of the intrusion against the immediacy and importance of the interest in crime prevention or law enforcement which he seeks to advance.[7] In striking this balance, we have held that traffic stops must be limited in time and scope and that police officers must limit their questions to those reasonably related to the circumstances that justified the initiation of the stop.[8]

---

[3] OCGA § 40-8-76.1 (f).
[4] See State v. Milsap, 243 Ga. App. 519, 520 (528 SE2d 865) (2000).
[5] OCGA § 40-8-76.1 (f).
[6] Davis v. State, 232 Ga. App. 320, 321-322 (1) (501 SE2d 836) (1998).
[7] State v. Blair, 239 Ga. App. 340, 341 (521 SE2d 380) (1999).
[8] Id.; Barraco v. State, 244 Ga. App. 849, 850 (1) (537 SE2d 114) (2000).

If the officer questions and detains the suspect for other reasons, he exceeds the scope of permissible investigation unless he has reasonable suspicion of other criminal activity.[9] Whether a given set of facts rises to the level of reasonable, articulable suspicion of criminal activity is a legal question.[10]

In this case, the officer was authorized to ask Bell for his license to establish his identity and to ask questions reasonably related to the traffic violation.[11] Bell's license showed a Macon address, so the officer asked him if he still lived in Macon and then, based on Bell's voluntary comments about what he was doing in Atlanta, the officer asked him a follow-up question about his friend. At that point, new articulable facts giving rise to a reasonable suspicion of criminal conduct came to light, e.g., Bell refused to answer the officer's question and kept looking around, the passenger attempted to get out of the car and then refused to fully comply with the officer's request to close the door, and the officer noticed large bags located on the car's backseat. The conversation was in no way extensive or prolonged, and the officer's inquiry was reasonably related to the circumstances that justified the initiation of the stop.[12] Under the circumstances, it is clear that the officer was acting on something more than a mere hunch and that the limited, additional investigation was not arbitrary or harassing.[13] Because the brief detention was supported by reasonable suspicion, the items of contraband found by the police as a result of the detention were legally obtained. The trial court did not err in denying Bell's motion to suppress.[14]

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED FEBRUARY 23, 2001.

*Daryl W. Queen*, for appellant.
*J. Tom Morgan, District Attorney, Ingrid Skidmore, Barbara B. Conroy, Assistant District Attorneys*, for appellee.

---

[9] *Blair*, supra; see *Almond v. State*, 242 Ga. App. 650, 652 (1) (530 SE2d 750) (2000).
[10] *Migliore v. State of Ga.*, 240 Ga. App. 783, 785 (525 SE2d 166) (1999).
[11] See generally *Smith v. State*, 216 Ga. App. 453, 455 (2) (454 SE2d 635) (1995).
[12] See generally *State v. Hall*, 235 Ga. App. 412, 415 (509 SE2d 701) (1998).
[13] Id. at 416.
[14] See *Smith*, supra; *Harris v. State*, 239 Ga. App. 537, 539-540 (2) (a) (521 SE2d 462) (1999).