A02A0015. BAKER v. THE STATE.
(567 SE2d 738)

BARNES, Judge.
Devone Baker was indicted for violation of the Georgia Controlled Substances Act. Following the denial of his motion to suppress and subsequent conviction after a bench trial based primarily on

---

stipulated facts, he appeals. Baker contends that the trial court erred in denying his motion to suppress because (1) the stop of his vehicle was unaccompanied by reasonable articulable suspicion and (2) the consent to search his car was not freely and voluntarily given.

Baker argues that the stop of his vehicle was not supported by reasonable and articulable suspicion. We agree.

Upon review of the denial of the motion to suppress, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them. *Allenbrand v. State*, 217 Ga. App. 609 (1) (458 SE2d 382) (1995). Further, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous, and the reviewing court must construe the evidence most favorably to upholding the trial court's findings and judgment. *Stokes v. State*, 238 Ga. App. 230 (518 SE2d 447) (1999).

So viewed, the evidence shows that shortly after midnight on May 12, 2000, Officer Ed Mashburn of the Riverdale Police Department was on routine patrol of a commercial area known as McElroy's Alley. Officer Mashburn testified that commercial patrols are conducted to look for "suspicious vehicles or persons in commercial areas that are not normally open for operation." He said that he routinely patrolled McElroy's Alley looking for criminal activity, such as "burglaries, thefts, things of that nature." He described McElroy's Alley as a commercial area in the center of the city comprising primarily automobile repair businesses. A private road runs through the alley and connects two state highways — Highways 85 and 139, which is also known as Church Street. He said that the area is not well lighted and that he has responded to several theft and burglary calls in McElroy's Alley during his eight years with the department.

While on patrol that night, he saw Baker's car traveling eastbound in McElroy's Alley. He testified that he became suspicious of the vehicle when it turned down a narrow, poorly maintained road in the alley which was not used for normal traffic. He said that Baker's route would have placed him in the back parking lot of a used car lot which had experienced numerous thefts. The officer activated his blue lights, pulled Baker over and asked for his license and proof of insurance. Baker had a valid Georgia tag registered to an Atlanta address, but he was carrying a temporary Alabama license. Baker told the officer that he recently moved to Georgia and had not changed his residence. According to the officer's testimony, Baker said that he was in McElroy's Alley to meet someone at Jim's Repair Shop, a nearby business. He could not, however, produce the name of the person, but said that he drove a Chevrolet convertible. The officer

testified that he knew the owner of the repair shop and that the owner drove a Dodge Ram pickup truck and a Harley Davidson. The officer testified that although he was not concerned about Baker's Alabama license, he was still worried about Baker's presence in McElroy's Alley, so he asked for consent to search the car to look for "burglary tools" and "things of that nature." Baker consented and said that "he had nothing to hide." The officer found a small wooden box containing marijuana and a pipe in the floorboard between the passenger and driver's seat.

When asked for the precise reason that he stopped Baker, the officer testified that it was because "[h]e was in an area that was a commercial area that was, you know, all the businesses were closed at that time of night, and the amount of thefts and things of that nature in that area." When asked if there was access to one of the major highways from Baker's locale, the officer indicated that there was, although the area is difficult to traverse because of a telephone pole with guy wires hanging down and bad potholes. The officer also indicated that while he was trying to confirm whether a crime had been committed, he was not aware of a particular report of any criminal activity at that time. Further, the officer was not aware of any traffic violations that Baker may have committed. The officer also indicated that Baker did not appear to be overly nervous, nor were there any symptoms of alcohol use.

The trial court denied Baker's motion to suppress, holding that in light of the location, time and officer's experience, the officer had the requisite articulable suspicion to stop Baker.

1. Police may briefly detain someone for investigatory purposes if they have an articulable suspicion of criminal conduct. *Brown v. State*, 188 Ga. App. 184, 186 (372 SE2d 514) (1988); see *Terry v. Ohio*, 392 U. S. 1, 30 (V) (88 SC 1868, 20 LE2d 889) (1968). However, "[a]n investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." (Citations and punctuation omitted.) Id. "Such articulable suspicion that the law has been or is about to be violated is 'less than probable cause, but greater than mere caprice.' [Cit.]" *Garmon v. State*, 271 Ga. 673, 677 (2) (524 SE2d 211) (1999).

> The U. S. Supreme Court recognized the difficulty in defining the elusive concept of what cause is sufficient to authorize police to stop a person, and concluded that the essence of the elusive concept was to take the totality of the circumstances into account and determine whether the detaining officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity. This demand for specificity in the information upon which

police action is predicated is the central teaching of the Supreme Court's Fourth Amendment jurisprudence.

(Citations and punctuation omitted.) *State v. Winnie*, 242 Ga. App. 228, 229-230 (529 SE2d 215) (2000).

While "[c]learly an officer is justified in 'closely observing' a vehicle that pulls into . . . a closed business . . . such conduct itself is not illegal." *State v. Winnie*, supra, 242 Ga. App. at 230. In *Attaway v. State*, 236 Ga. App. 307 (511 SE2d 635) (1999), in which the police received reports that a car was circling around a subdivision several times late at night, we noted:

> [n]o evidence was introduced that such activity violated any local ordinance or other applicable law, or that there was any other basis for the stop. While the police officer testified that there had been past incidents of vandalism in the area, the police received no information that Attaway had committed any such acts. Although . . . the police might have been justified in closely observing Attaway's actions, his behavior did not provide a particularized and objective basis for suspecting him of criminal activity sufficient to justify an investigatory stop.

(Citation and punctuation omitted.) Id. at 309.

Likewise in *Winnie*, where an officer stopped a truck that turned into the parking lot of a Salvation Army facility at 4:00 a.m. because it appeared suspicious since the facility was closed, we noted that "[a]lthough [the officer] might have suspected an attempted burglary when he saw the truck enter the parking lot, the basis for such suspicion disappeared when the truck started to leave the parking lot. [The officer] did not claim that the truck had been parked or out of his sight long enough to have already accomplished a burglary." *State v. Winnie*, supra, 242 Ga. App. at 230.

In this case, the officer never saw Baker stop his car, never indicated that Baker was in close proximity to a business, and never indicated that Baker did anything other than turn down a road in McElroy's Alley that would have been difficult to traverse had he continued. The officer even indicated that, as was his practice, he rode through the area "without any lights on at all and also at a low speed with the car in low just with my windows down to see if I can hear anything," and there was no evidence of any criminal activity afoot.

Although the officer said that Baker's statements about meeting someone at a repair shop aroused his suspicions, those facts were not within the officer's knowledge at the time of the stop. Therefore,

those facts may not be used in support of a finding of reasonable articulable suspicion. See *Harvey v. State*, 266 Ga. 671, 673 (469 SE2d 176) (1996) (actions must rely on current knowledge, not hindsight).

Accordingly, because at the time the officer made the stop, he had no "particularized and objective" reason for believing that Baker was engaged in criminal activity, evidence obtained as a result of the ensuing search of Baker's vehicle should have been suppressed. Therefore, we reverse the trial court's judgment and remand the case with direction to grant the motion to suppress.

2. Because of our holding in Division 1, we need not address Baker's second enumeration of error.

*Judgment reversed and remanded with direction. Pope, P. J., and Ruffin, J., concur.*

DECIDED JUNE 24, 2002.

*Lloyd J. Matthews*, for appellant.
*Keith C. Martin, Solicitor-General*, for appellee.

