## A03A0629. THE STATE v. STILLEY.
### (584 SE2d 9)

RUFFIN, Presiding Judge.

Stiles Dean Stilley, who was charged with driving under the influence,[1] moved to suppress evidence obtained during a traffic stop. Finding that the police officer who stopped Stilley lacked articulable suspicion for the stop, the trial court granted the motion. The State appeals, and for reasons that follow, we reverse.

In reviewing a trial court's ruling on a motion to suppress, we defer to the trial court's factual findings unless such are clearly erroneous.[2] In this case, the facts are largely undisputed, and we review the application of the law to the facts de novo.[3]

The record shows that on March 22, 2001, at approximately 6:30 p.m., Officer D. L. Williams received a dispatch that a male — later identified as Stilley — was "slumped over the wheel at a red light." The unknown person who called in the message to law enforcement also relayed that the male was in a pickup truck, gave the location of the truck, and provided the license plate number. Williams, who was "[f]airly close" to the location, drove to the intersection, looking for the pickup truck. When Williams found the truck, he saw Stilley properly driving. Although Williams did not witness Stilley commit *any* traffic violations, he activated his blue lights and siren, signaling Stilley to stop. Rather than stopping, Stilley continued driving for approximately two to three miles before another officer assisted Williams in forcing Stilley to stop.

Stilley was arrested and charged with driving under the influence. He then moved to suppress the evidence, arguing that the police lacked reasonable, articulable suspicion for the stop. The trial court agreed and granted the motion.

"[A]n officer may conduct a brief investigative stop of a vehicle only when such a stop is justified by specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct."[4] The

---

[1] Stilley also was charged with driving with a suspended license and failure to yield to an emergency vehicle.

[2] See *Baker v. State,* 256 Ga. App. 75, 76 (567 SE2d 738) (2002).

[3] *State v. Thompson,* 256 Ga. App. 188 (569 SE2d 254) (2002).

[4] (Punctuation omitted.) *State v. Templeman,* 229 Ga. App. 6, 7 (492 SE2d 902) (1997).

"stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity."[5]

> The U. S. Supreme Court recognized the difficulty in defining the elusive concept of what cause is sufficient to authorize police to stop a person, and concluded that the essence of the elusive concept was to take the totality of the circumstances into account and determine whether the detaining officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity. This demand for specificity in the information upon which police action is predicated is the central teaching of the Supreme Court's Fourth Amendment jurisprudence.[6]

Under the totality of the circumstances, we agree with the trial court that Williams lacked a sufficient basis for stopping Stilley. The record demonstrates that Williams heard that a driver was slumped over the steering wheel at a *red light*. By Williams' own testimony, he responded quickly and discovered Stilley driving with no apparent difficulty. Thus, Williams' concern that Stilley was incapacitated should have been dispelled at that time.[7] Although Williams certainly could have followed Stilley to ascertain that he was driving safely, he was not authorized to institute an immediate investigatory stop under the circumstances of this case.[8] To the extent that this Court's ruling in *State v. Thomason*[9] suggests otherwise, it is hereby overruled.

The State further argues that Williams was authorized to pull Stilley over to ensure that he was " 'okay.' " Although a police officer may act out of a desire to be solicitous, if he suspects wrongdoing, he must comply with the Fourth Amendment, which requires that he have some objective basis for suspecting criminal conduct before stopping the car.[10] And the mere fact that a person leans forward over a steering wheel, without more, does not provide a sufficient basis for suspecting that the person is or is about to be engaged in criminal conduct.[11]

---

[5] (Punctuation omitted.) *Baker*, supra at 77 (1).

[6] Id. at 77-78.

[7] See *Templeman*, supra.

[8] See *Baker*, supra; *Butts v. City of Peachtree City*, 205 Ga. App. 492-493 (1) (422 SE2d 909) (1992).

[9] 153 Ga. App. 345, 346-347 (1) (265 SE2d 312) (1980).

[10] See *Templeman*, supra; see also *Nelson v. State*, 252 Ga. App. 454, 456-457 (1) (556 SE2d 527) (2001); *Maxwell v. State*, 249 Ga. App. 747-748 (549 SE2d 534) (2001).

[11] In so holding, we note the absence of any evidence to suggest that Stilley was slumped over his steering wheel for a lengthy time, which might, in some circumstances, give rise to articulable suspicion.

According to the State, Williams was authorized to stop Stilley because of his subsequent failure to pull over when Williams activated his blue lights and siren. Under OCGA § 40-6-395 (a), a driver who wilfully fails or refuses to bring his "vehicle to a stop or otherwise . . . flee[s] or attempt[s] to elude a pursuing police vehicle or police officer when given a visual or an audible signal to bring the vehicle to a stop" is guilty of a high and aggravated misdemeanor. The State cites *Eichelberger v. State*[12] for the proposition that a driver's violation of this Code section provides an intervening, legitimate basis for stopping the driver. Although we find this argument troubling, we agree.

As Williams lacked articulable suspicion, he should not have attempted to stop Stilley at the outset. Thus, the evidence Williams discovered arguably was tainted by the illegality of the initial attempt to stop Stilley.[13] But evidence is not impermissibly tainted

> simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which [the] objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.[14]

Accordingly, the issue before this Court is whether Stilley's violation of OCGA § 40-6-395 (a) is sufficient to purge the otherwise tainted evidence.

A similar situation was addressed by the Eleventh Circuit in *United States v. Bailey*.[15] In that case, Drug Enforcement Administration agents at the Atlanta airport arrested Bailey, who fit the profile of a drug courier. As the agents escorted Bailey to the police precinct, Bailey fled from custody. When the agents attempted to apprehend Bailey, he struck one of the agents and tried to take the agent's gun. The Eleventh Circuit assumed, arguendo, that Bailey's initial arrest lacked probable cause and was thus illegal. It concluded, however, that because Bailey's actions in forcibly resisting arrest constituted "a new, distinct crime," he could be arrested for the new crime and searched accordingly.[16] In other words, Bailey's

---

[12] 252 Ga. App. 801 (557 SE2d 439) (2001).
[13] See *Brown v. State*, 188 Ga. App. 184, 187 (372 SE2d 574) (1988).
[14] (Punctuation omitted.) *Patel v. State*, 240 Ga. App. 178, 179 (522 SE2d 760) (1999).
[15] 691 F2d 1009 (11th Cir. 1982).
[16] See id. at 1017-1019; but see *State v. Newton*, 227 Ga. App. 394, 397 (4) (489 SE2d 147) (1997) (physical precedent only) (declining to follow *Bailey* due to Georgia rule that one may forcibly resist an illegal arrest).

actions in striking the officer would have been illegal even if he had not been unlawfully arrested. Citing public policy, that Court declined to immunize defendants from subsequent criminal acts committed in response to a police officer's improper detention or stop.[17]

Here, had Stilley stopped in response to Williams' activation of his lights and siren, the fruits of any search likely would have been suppressed.[18] However, by choosing to ignore the blue lights, Stilley violated OCGA § 40-6-395 (a). This new criminal act essentially purged the taint of the otherwise illegal stop.[19] Although we do not countenance a law enforcement officer's improper use of lights and sirens, we will not leave "the determination of whether there is a 'legal' basis for a traffic stop . . . to the driver."[20] Accordingly, we find that the trial court erred in granting Stilley's motion to suppress, and we reverse.

*Judgment reversed. Smith, C. J., Andrews, P. J., Johnson, P. J., Blackburn, P. J., Eldridge, Barnes, Miller, Ellington, Phipps, Mikell and Adams, JJ., concur.*

DECIDED JUNE 4, 2003 —
RECONSIDERATION DENIED JUNE 24, 2003 — ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Gerald N. Blaney, Jr., Solicitor-General, Gary S. Vey, Jonathan D. Aurelia, Assistant Solicitors-General*, for appellant.
*Chandler & Britt, Deborah F. Weiss*, for appellee.

---

[17] *Bailey*, supra at 1017.
[18] See *Davis v. State*, 235 Ga. App. 10, 11 (1) (507 SE2d 827) (1998) (where officer lacks articulable suspicion to stop, defendant's remedy is a motion to suppress).
[19] See *Eichelberger*, supra.
[20] Id. at 804 (2).