## A03A1915. HOWARD v. THE STATE.
### (595 SE2d 660)

ANDREWS, Presiding Judge.

Hershel Daniel Howard was found guilty in a bench trial of driving under the influence of alcohol and driving with an open container of alcohol. His sole claim on appeal is that the trial court should have granted his motion to suppress the evidence supporting the guilty verdicts because the police officer who stopped the vehicle he was driving did so without any reasonable basis under the Fourth Amendment. Because we find the officer had a reasonable basis to make an investigatory stop of the vehicle, the trial court correctly denied the motion to suppress. Accordingly, we affirm the judgment of conviction.

The evidence produced at the hearing on the motion to suppress showed the following: Two uniformed police officers drove their marked patrol cars to a house to serve a domestic violence arrest warrant on a male suspect who lived at the house. They drove down a short driveway to the house and parked the patrol cars. The house was located on a dirt road where only six other residences were located. The officers did not know what the suspect looked like and

---

did not know what kind of vehicle he drove, although they did have some "information about a pickup and a trailer." After being unable to find the suspect or anyone else at the house, one of the officers testified that he saw a pickup truck driven by a man stop on the road directly in front of the driveway to the house. The officer said the driver "looked up and saw us and kind of took off, which raised my suspicion a little bit." Asked, "Who did you think was in the truck?" the officer replied: "Well, I didn't know. My first thought was it was the person I was looking for at the house."

When the driver of the truck took off, the officer followed in his patrol car, ran the tag on the truck and determined it was not registered to the suspect, then stopped the truck to see if the driver was the suspect he was looking for. The officer testified that, in his five years of experience in serving arrest warrants, it was not uncommon that persons who know they are wanted to drive someone else's vehicle. The driver of the truck was not the suspect, however, but Howard, who identified himself as the suspect's brother-in-law. Howard told the officer he was aware of the arrest warrant and that he drove to the house to make sure his brother-in-law had been arrested. During this conversation, the officer noticed a strong odor of alcohol coming from the truck, and in response to the officer's question, Howard admitted he had been drinking. Howard also admitted he was drinking a beer in the truck just before the officer stopped him, and the officer saw a case of beer in the back seat of the truck. The officer asked Howard to step out of the truck to perform field sobriety tests, and when Howard failed to pass the tests, the officer arrested him on DUI and open container charges.

The issue in this case is whether the officer had a reasonable basis to make an investigatory stop of Howard's truck. The Fourth Amendment protection against "unreasonable searches and seizures" extends to brief investigatory stops of persons and vehicles that fall short of having the probable cause necessary for a traditional arrest. *Vansant v. State*, 264 Ga. 319, 320 (443 SE2d 474) (1994); *Terry v. Ohio*, 392 U. S. 1, 9 (88 SC 1868, 20 LE2d 889) (1968); *United States v. Cortez*, 449 U. S. 411, 417 (101 SC 690, 66 LE2d 621) (1981). In such cases, the Fourth Amendment requires that the detaining officer have a reasonable suspicion of criminal activity. *Vansant*, 264 Ga. at 320. In deciding if reasonable suspicion existed, a reviewing court must look at the "totality of the circumstances" to determine whether the detaining officer had a "particularized and objective basis" for suspecting criminal activity. Id.; *Cortez*, 449 U. S. at 417-418. "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." (Citations and punctuation omitted.)

*United States v. Arvizu*, 534 U. S. 266, 273 (122 SC 744, 151 LE2d 740) (2002).

Here, it was reasonable for the officer to infer, based on his training, experience, and common sense, that the man driving the truck who stopped, looked at him while he was at the house attempting to serve the warrant, and then "took off," could be the man he was trying to find and arrest. That the officer also had some indication the suspect might be driving a truck, and the house was located on a sparsely populated dirt road not likely to be heavily traveled by nonresidents, made the officer's inference even more reasonable. Under the totality of the circumstances, the officer had a particularized and objective basis for suspecting that the driver of the truck was the suspect trying to elude arrest. Although the officer's investigation revealed that the driver was not the suspect, "[a] determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct." *Arvizu*, 534 U. S. at 277.

It was reasonable under the Fourth Amendment for the officer to stop the truck to identify the driver. After making a valid stop to check the driver's identity, the officer's detection of the strong odor of alcohol made it reasonable for him to continue the detention to ask Howard if he had been drinking. *Bell v. State*, 248 Ga. App. 254, 256-257 (546 SE2d 34) (2001).

Contrary to Howard's contention, the decision in *State v. Mallard*, 246 Ga. App. 357 (541 SE2d 46) (2000), does not require a finding that the investigative stop of the vehicle for the sole purpose of identifying the driver violated the Fourth Amendment. The facts in *Mallard* distinguish it from the present case and show that there is no broad rule against stopping a car to identify the driver. In *Mallard*, police officers who were preparing to execute a search warrant for marijuana on a known suspect's residence received information that two unidentified persons had just left the residence in a car prior to execution of the warrant. Id. at 357-358. An officer stopped the car for the sole purpose of determining if the known owner of the residence about to be searched was in the car. Id. After determining that the owner of the residence was not in the car, the officer continued the detention by asking the occupants if they had any marijuana, and both occupants produced marijuana. Id. Because the detaining officer had no information that the two occupants of the car were involved in any wrongdoing, we found that stopping and questioning the occupants solely to see who was in the car violated the Fourth Amendment, and we upheld suppression of the marijuana. Id. at 360-361, 365. In so holding, however, we noted that an investigative stop would have been justified under the circumstances if "there were some objective manifestations that the occupant in the vehicle leaving the search location was engaged in criminal activity." Id. at 361.

The Fourth Amendment does not prohibit a police officer from stopping a car for the sole purpose of identifying the driver where the officer has reasonable suspicion that the driver is a person attempting to elude arrest. Because the officer in this case had such reasonable suspicion, the stop was valid, and the trial court correctly denied the motion to suppress.

*Judgment affirmed. Johnson, P. J., Blackburn, P. J., Eldridge and Mikell, JJ., concur. Barnes and Adams, JJ., dissent.*

ADAMS, Judge, dissenting.

I respectfully dissent because I do not believe that the stop was authorized by a reasonable articulable suspicion of criminal activity.

> An officer may briefly stop a vehicle to investigate only if the stop is justified by specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct, that is, by "some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." (Citations and punctuation omitted.) *Postell v. State of Ga.*, 264 Ga. 249 (443 SE2d 628) (1994).

*Martin v. State*, 257 Ga. App. 435, 436-437 (571 SE2d 459) (2002).

The evidence showed that Howard was stopped only because he slowed down in front of a residence where police were attempting to serve an arrest warrant. Officer Siegel testified he stopped Howard for identification purposes after observing his vehicle come "almost [to] a complete stop" at the end of the driveway of the residence where he was attempting to serve the warrant. Although Siegel said Howard then "kind of took off," he also testified that he followed Howard for a short time before stopping him, and there was no evidence that he was attempting to elude the officer or flee the scene. Rather, the officer testified that prior to the stop he did not observe Howard do anything illegal or violate any traffic laws. And other than gender, the officer had no information, such as a physical description of the person or his vehicle, that would point to Howard as the person he was seeking. The most the officer had, other than a name and address, he characterized as "nonchalant" information that the person might be driving a "pick-up with a trailer." But Howard was not driving a "pick-up with a trailer," and by the time the officer stopped Howard, he had run the vehicle tag and knew it was not registered to the person named in the warrant.

Although each case must turn on its own circumstances, we have previously upheld the grant of motions to suppress where the sole basis of the stop was to determine who was inside the vehicle. *State v. Mallard*, 246 Ga. App. 357, 361 (541 SE2d 46) (2000). In that case,

police officers observed a vehicle leaving a residence where a search warrant was about to be executed, and they stopped the vehicle about one-half mile from the residence solely to determine whether the owner of the premises was inside the vehicle. The officers had no specific information about the car or its occupants, had no reason to believe the car belonged to the owner of the premises, and did not observe the driver of the vehicle or his passenger violate any traffic or other laws. Based on these circumstances, we concluded, inter alia, that the stop was not based on a reasonable articulable suspicion of criminal activity and upheld the grant of the motions to suppress the evidence obtained following the stop. Id. at 364-365.

The majority holds, however, that *Mallard* is factually distinguishable because the officer in that case "stopped the car for the sole purpose of determining if the known owner of the residence about to be searched was in the car." Id. at 357-358. I fail to see how this distinguishes it from the present case, since the officer here testified, "I wanted to stop him for identification purposes only truthfully, just to make sure he wasn't the person I was looking for."

Also instructive to our analysis here are the numerous other decisions in which our state appellate courts have considered whether the suspect's behavior or information known to the officer established a particularized and objective basis for suspecting involvement in criminal activity necessary to justify the stop even though no specific criminal conduct, illegal activity, or violation of the law was observed. For example, in the following cases, either this Court or our Supreme Court concluded that the stop was not justified: *Hughes v. State*, 269 Ga. 258, 261 (1) (497 SE2d 790) (1998) (driving slowly around high crime area insufficient to justify stop); *Martin v. State*, 257 Ga. App. at 436-437 (denial of motion to suppress reversed when the only suspicious behavior officer observed was suspect not moving through intersection after traffic light turned green); *Baker v. State*, 256 Ga. App. 75, 77 (1) (567 SE2d 738) (2002) (denial of motion to suppress reversed where suspect observed turning down a difficult to traverse road in commercial area at night after businesses were closed); *Holmes v. State*, 252 Ga. App. 286, 288-289 (556 SE2d 189) (2001) (denial of motion to suppress reversed when officer observed suspect in a high crime area walk to the passenger side of car, change his mind about walking toward an apartment complex after he observed officers, and go and sit in what appeared to be an abandoned car); *Smith v. State*, 245 Ga. App. 613, 615 (538 SE2d 517) (2000) (stop not justified when suspect observed sitting in apartment parking lot late at night, who then left quickly as officer approached); *State v. Winnie*, 242 Ga. App. 228, 230-231 (529 SE2d 215) (2000) (grant of motion to suppress affirmed where suspect drove behind closed business at 4:00 a.m., but no criminal

activity observed, and suspect was in the process of exiting parking lot at the time of the stop); *Howden v. State*, 240 Ga. App. 139, 141 (522 SE2d 279) (1999) (denial of motion to suppress reversed where suspect observed driving away from warehouse located in area known for criminal activity late at night); *In the Interest of T. J. B.*, 237 Ga. App. 824, 825-826 (517 SE2d 77) (1999) (denial of motion to suppress reversed when evidence showed only that juvenile was deliberately avoiding contact with law enforcement in an area known for drug transactions); *Attaway v. State*, 236 Ga. App. 307, 309 (511 SE2d 635) (1999) (stop not justified when suspect observed driving several times around subdivision late at night). And equally instructive are the cases where this Court or our Supreme Court found the stop was justified: *Garmon v. State*, 271 Ga. 673, 677-678 (2) (524 SE2d 211) (1999) (officers had independent information that suspects observed leaving residence, where officers had reasonable belief illegal activities were occurring, were participating in those activities); *Cox v. State*, 263 Ga. App. 266 (587 SE2d 205) (2003) (officers observed defendant at 3:40 a.m. in a no-trespass-posted parking lot in an area plagued by burglaries, and evasive action taken upon approach of police cruiser); *Evans v. State*, 262 Ga. App. 712 (586 SE2d 400) (2003) (suspect appeared startled when he saw officer behind him, tried to evade officer, and then returned to his original route when officer no longer behind him).

In this case, I believe that although the circumstances may have been such that the officer would have been justified in following Howard in order to closely observe his activities to gain more information that would have either confirmed the officer's suspicions that Howard was the person he was looking for or eliminated him as a suspect, the information known to the officer at the time of the stop did not provide a particularized and objective basis for suspecting Howard of illegal activity such that an investigatory stop was justified. Consequently, I would reverse the trial court's denial of Howard's motion to suppress.

I am authorized to state that Judge Barnes joins in this dissent.

DECIDED FEBRUARY 25, 2004

*Head, Thomas, Webb & Willis, Thomas J. Thomas*, for appellant.
*Jason J. Deal, District Attorney, Lindsay H. Burton, Assistant District Attorney*, for appellee.