### CHATFIELD v. ÆTNA INS. CO.

(Supreme Court, Appellate Division, First Department. April 11, 1902.)

INSURANCE—INDEMNITY FOR LOSS OF USE AND OCCUPANCY—TOTAL LOSS.
There is a total loss, within a hotel keeper's policy, indemnifying him against loss of use and occupancy; only 10 of the 115 rooms, and those on the top or seventh floor, not being injured by fire or water, and the restaurant and the elevator being destroyed.

Appeal from trial term, New York county.

Action by John Chatfield against the Ætna Insurance Company. From judgment for plaintiff on decision, a jury being waived, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and LAUGHLIN, JJ.

George H. Fletcher, for appellant.
Edgar J. Nathan, for respondent.

McLAUGHLIN, J. This action was brought to recover a sum alleged to be due the plaintiff under a policy of insurance which indemnified him against damage by fire to the use and occupancy of a hotel in the city of New York. The policy provided that, in consideration of the payment of the premium therein named, the defendant insured the plaintiff for the term of one year, in the sum of—

"Ten thousand (10,000) dollars, on the use and occupancy of the hotel property known as the 'Hotel Jefferson'; * * * [and] for the purpose of this insurance it is understood and agreed that the value in case of total loss for said use and occupancy * * * shall be $10,000 annually, or $27.38 per day. It is a condition of this contract that if said building, or any part thereof, shall be destroyed or so damaged by fire during the term or continuance of this policy, so that the said hotel, bar, or restaurant connected therewith, is entirely prevented from receiving or providing for its guests, the insurers shall be liable to the assured at the rate per day mentioned for each day of said prevention, or, in case said buildings are so damaged as to

cause their partial destruction, then the insurers shall be liable per day in the following proportions, viz.: At the rate of $1 and ½ for each single sleeping room, $2 and 2½ per day for each double sleeping room, and $2 and 2½ per day for each private parlor or suite so damaged as to render them untenantable. For loss of income from business of restaurant and café, $10 per day; for. loss of income from business of the bar and cigar stand, $10 per day. Loss, if any, to be computed from the day of occurrence of the fire to the time when the property so damaged or destroyed could, with ordinary diligence and despatch, be repaired or rebuilt and refurnished, ready for occupation."

The issuance of the policy, the injury to the hotel by fire, and the defendant's liability to the plaintiff were admitted, and the only issue presented by the pleadings or litigated upon the trial was the extent of such liability; the plaintiff claiming that there was only a partial loss of the "use and occupancy" of the hotel, for which reason the defendant was liable at the rate specified for the rooms which were injured, while, on the other hand, the defendant claimed that there was a total loss, and that its liability was limited to $27.38 per day during the time repairs were being made. At the close of the trial both parties stipulated that the jury might be discharged, and that the questions involved be determined by the court. This was accordingly done, and the court subsequently found that the premises were so damaged that there was a total loss of the "use and occupancy," which continued for a period of four months, for which plaintiff was entitled to recover at the rate of $27.38 per day, amounting in the aggregate to $3,333.33; and judgment was entered accordingly, from which the plaintiff has appealed.

A careful consideration of the record has satisfied us that the trial court was right in reaching the conclusion that there was a total loss of the use and occupancy of the hotel, within the meaning of the policy. There is little or no dispute as to the facts involved. The hotel was a seven-story building, and had in it 115 rooms, out of which 105 were damaged by fire or water to such an extent that they could not be used. The elevator, which was situated in the center of the building, and ran from the basement to the top floor, was destroyed, or injured so that it could not be used for something like four months after the fire. The plaintiff himself, in describing the hotel after the fire, testified:

"The greater part of it was thoroughly wet down. Some of it was burned. The rest of it was burned out. The elevator was burned up. The rooms upstairs, opening on the elevator shaft,—the windows opening on the elevator shaft,—were burned out or ripped out. The rest of the house, with the exception of the top floor, was damaged by water. One corner of the top floor, the partitions were burned out between some of the small rooms. * * * All of the rooms [except 10] were damaged by water and fire and smoke. In some of the damaged rooms the ceilings fell. The walls were wet, and the ceilings were wet, and the decorations were ruined. Some of the doors were burned away. Some of the windows opening into the shaft were burned out, and the glass was broken."

In addition to this, the restaurant was destroyed, and the hotel injured in other respects. It is true, there is no evidence to the effect that guests were not received at the hotel, but the evidence as to the condition of the hotel after the fire is sufficient to justify a finding that they were not. It appears that, immediately following the fire,

proceedings were taken to repair and reconstruct the hotel, and to that end the furniture was taken out; carpets were removed; workmen, consisting of painters, plasterers, and plumbers, were put to work in the hotel, and they there continued until some time early in June; and, as indicating how extensive these repairs were, the plaintiff testified that not only the building itself was redecorated, but every room in it was redecorated, and, on completion of the repairs, patrons of the hotel were notified of that fact by the plaintiff issuing a card saying:

"The management requests the pleasure of your inspection of the substantial reconstruction and renovation of the Hotel Jefferson, Wednesday evening, July 12, 1901."

Under such circumstances, it does not seem to us that argument is necessary to demonstrate that the evidence was sufficient to justify the finding of the trial court that there was a total loss of the use and occupancy of the hotel during the time for which an award for damages has been made.

But it is said that under the terms of the policy there could not be a total loss, because certain rooms were not injured or destroyed. The policy, it will be remembered, was not to indemnify the plaintiff for an injury to the building, but simply to indemnify him for the loss of use and occupancy of it; and, when the building was so far destroyed that the business connected with it could not be carried on until repairs had been made, then there had occurred a total loss, within the meaning of the policy, and for which the defendant was liable to respond in damages at the rate provided in the policy, viz., $27.38 per day. Here there was a total loss. Plaintiff was awarded $27.38 per day from the time the fire occurred until business in the hotel was resumed. He was given, therefore, all the defendant agreed to give him, and has no just cause to complain of the amount awarded.

It follows that the judgment appealed from must be affirmed, with costs. All concur.