## 43779.  McKEEVER v. THE STATE.

SUBMITTED JULY 3, 1968—DECIDED SEPTEMBER 4, 1968—
REHEARING DENIED SEPTEMBER 25, 1968—

*Garland & Garland, Edward T. M. Garland,* for appellant.

*Lewis R. Slaton, Solicitor General, John W. Stokes, J. Walter LeCraw,* for appellee.

JORDAN, Presiding Judge. 1. The third enumeration refers to the testimony of three witnesses concerning an altercation on the premises of the club on Sunday one week before the shooting, involving the defendant and others, but not the deceased, which was terminated when it appeared that the defendant was

armed with a pistol. The court admitted the evidence over objection for the limited purpose of showing motive, intent, scheme, and course of conduct by the defendant, and overruled a motion for mistrial on account of this evidence. The fourth enumeration refers to the testimony of one of these witnesses that he told the manager of the club about the incident out of the presence of the defendant. This testimony is limited to the fact of informing the manager. The fifth and sixth enumerations are directed to the testimony of the manager, that on the Friday preceding the shooting he discussed the incident of the previous Sunday with the defendant, who told him that if he had drawn his pistol he would have used it, in reply to which the manager told him, "The best thing for you to do is stay away from the club henceforth and forever." This evidence was admitted under the same limitations as the testimony regarding the incident on the Sunday the week before the shooting. The ninth enumeration is directed to testimony of a witness who related a discussion with the defendant after the shooting, in which the defendant admitted an unsuccessful attempt to kill another person, stating "I told you I could shoot that pistol. I should have killed Knucklehead, but I missed him. I shot at him four times." The witness also disclosed that the defendant continued by saying, in reference to the victim in the present case, "I shot him. I played that sucker out of his life." Later, he reiterated this testimony in language indicating that the defendant told him that after he failed to kill Knucklehead he learned how to shoot, and tricked the victim in the present case into returning his, the victim's pistol, to the holster. Collectively, these enumerations are insisted upon solely on the basis that evidence of the general character of the defendant is inadmissible unless the defendant chooses to place his character in issue (see *Code* §§ 38-201, 38-202) and in so doing the defendant relies upon the leading case of *Bacon v. State*, 209 Ga. 261 (71 SE2d 615). The holding in the *Bacon* case, as expressed in the headnote, in recognizing that in the prosecution for a particular crime, evidence of a wholly distinct crime is irrelevant and inadmissible, expressly qualifies this general rule by stating, "unless there be shown some logical connection between the two

from which it can be said that proof of the one tends to establish the other." In that case the court was dealing with six unrelated previous convictions for attempted burglary and burglary as proof of the intent to steal in a trial for burglary, and noted in the opinion that an intent to steal, as distinguished from an intent to commit a felony, is not necessarily an essential element of burglary. Here, in a trial under an indictment for murder, it was essential, in order to convict for this offense, for the State to prove malice aforethought, i.e., a preconceived intention to kill without justification or excuse present when the acts occurred which resulted in the death of the victim. This is a state of mind, and although the jury by its verdict exonerated the defendant of malice aforethought, this issue and the intent of the defendant were in controversy throughout the trial. Although the evidence here under attack may show other criminal transactions, and thus reflect generally on the character of the defendant, it is logically and legally relevant to the controlling issue before the jury, whether the state of mind of the defendant was such that he acted with malice aforethought and murdered his victims, or whether he acted in the heat of passion, committing voluntary manslaughter, or whether he acted under justifiable circumstances. Under the circumstances here shown the evidence was properly admitted.

2. The second enumeration is based on the testimony of a witness to the altercation on the Sunday preceding the slaying, as discussed above, that on the next day he had a conversation with the manager of the club outside the presence of the defendant, the subject of which was the altercation of the previous day. The fact that the manager of the club obtained hearsay knowledge of the altercation in this manner is not itself hearsay, being within the direct knowledge of the witness, and the testimony was not inadmissible for any reason asserted.

3. The seventh enumeration is based on the testimony of the manager, to the effect that he informed the victim, outside the presence of the defendant, to keep the defendant off the club premises. The relevancy of this fact is clear, when considered with the testimony that the manager advised the defendant to stay away from the club, and the circumstances under which the altercation and "shoot-out" occurred.

4. The eighth enumeration is directed to the statement of a witness to the altercation preceding the "shoot-out" but not to the "shoot-out" itself, to the effect that he thought the trouble was over. Counsel insists there are no facts presented which would authorize this conclusion, and that its admission invades the province of the jury respecting an ultimate fact. Earlier testimony of the witness, admitted without objection, is as follows: "I thought it was over. I thought nothing else was going to happen and I left and went on the inside because I thought the two had parted and I went on in the inside and I know nothing else after that." He later reiterated the substance of his statement, and it was not until after the prosecutor again posed a question, stating, "That was your conclusion, you thought then . . ." that counsel first objected, at which time the witness again explained, "After they were parted, after standing between the gun, not knowing whether it was going to be fired or not, I thought it was best I move. After they had gone away, I went on the inside. I thought it was over." His testimony as a whole clearly shown the basis for and meaning of his conclusion, and no basis appears for its exclusion. See *Code* § 38-1708; *Hardin v. Rubin,* 169 Ga. 608, 610 (151 SE 31).

5. The tenth and eleventh enumerations involve the asserted error in allowing a witness to testify who had been in the courtroom in violation of the rule of sequestration, and the asserted error in refusing to allow the defendant's wife to testify concerning this witness's presence in the courtroom. The witness denied his presence in the courtroom, but the testimony of spectators contradicts this assertion. Although *Code* § 38-1703 expressly recognizes the rule of sequestration, it further provides that "no mere irregularity shall exclude the witness" and by numerous judicial decisions the enforcement of the rule, as applied to particular situations, is a matter for the exercise of a sound discretion by the court. If the witness were present in violation of the court order, this fact did not disqualify him as a witness. *Shelton v. State,* 220 Ga. 610 (140 SE2d 839). The asserted fact in the eleventh enumeration discloses only the original ruling of the court. Later, the court allowed the defendant's wife to testify as to the presence of the witness in the

courtroom, thus eliminating any basis for error in his original ruling.

6. The twelfth enumeration is based on the assertion that the court erred in restricting the defendant as to the matters he could state in his unsworn statement, including the defendant's references to the witness for the State who allegedly violated the sequestration rule. Argument is limited in the brief to a quotation from *Code Ann.* § 38-415 allowing the defendant to make "such statement in the case as he may deem proper in his defense" and the assertion of a denial of due process under Georgia law. The enumeration cites three pages of the transcript containing a portion of the supplemental statement of the defendant, and on these pages it does appear that the trial court cautioned the defendant not to go into matters regarding the motives and conduct of the witness who had testified against him, but during the course of a colloquy between the court and counsel, the court said, "Let him go ahead and complete his statement." Thereafter the court permitted the defendant to complete his statement without interruption, including his version of the motives and conduct of the witness. Following this the court asked the defendant, "Is that all you have to say?" and upon receiving a negative reply, directed the defendant to continue. The defendant continued at great length, and concluded by stating, "This is all I have to say," although he continued by requesting the recall of a witness. Even if the court may have intended to limit in some way the defendant's supplemental statement, it is clear that he acceded to the demands of counsel, and allowed the defendant to state everything which the defendant considered proper to his defense.

7. The first enumeration is based on the refusal of the court to grant a mistrial on account of a statement of the prosecutor in his argument to the jury to the effect that the defendant was more of a threat to the lives of the people of Atlanta than the Viet Cong, and the thirteenth enumeration is based on the refusal of the court to grant a mistrial on the assertion that the prosecutor argued the facts of another case, *Hawkins v. State*, 25 Ga. 207 (71 AD 166), to the jury.

In a murder case involving the homicide of a defenseless wife,

the Supreme Court, in considering a similar comparison of the defendant to the Viet Cong, as shown by the first enumeration, commented that "The language objected to was a permissible inference from the evidence and its logic was for the jury to determine. It did not introduce, by way of argument, facts not in the record." *Martin v. State,* 223 Ga. 649, 651 (157 SE2d 458).

The prosecutor read to the jury an excerpt from p. 211 of the *Hawkins* opinion, as follows: "Human life is sacrificed at this day, throughout the land, with more indifference than the life of a dog, especially if it be a good dog. Scott may not have been a good citizen, still he was a human creature, under the protection of the laws of the State; and even in his person, the punitory power of the government must be vindicated." The court, on request of counsel, expressly excluded the portion referring to a dog, cautioning the jury not to consider it at all, and admonished the prosecutor not to go into the facts of the case. A permissible inference under the evidence in the present case clearly arises to the effect that the victim, whatever his general character or his feelings toward the defendant, was maneuvered into a defenseless position by the conduct of the defendant, who then proceeded to shoot him, and all the excerpt illustrates, in reference to the present case, is the exclusive duty and power of the State to punish the defendant for the slaying, if unjustified, regardless of the general character of the victim. It did not introduce facts not in evidence such as to afford the basis for grant of a mistrial. See *Martin v. State,* 223 Ga. 649, supra; *Powell v. State,* 179 Ga. 401, 411 (176 SE 29).

8. The fourteenth enumeration is a blanket enumeration on the refusal of the court to give fifteen requested instructions. Counsel asserts in his brief that "The appropriateness of these charges collectively is submitted and a more complete presentation of the legal merit of said charges shall be presented by supplemental brief." There is no supplemental brief. Rule 17 (c) (2) of this court applies, and this enumeration is deemed to be abandoned, requiring no further consideration.

*Judgment affirmed. Pannell and Deen, JJ., concur.*