## A04A2087. WILLIAMS v. THE STATE.
### (604 SE2d 640)

PHIPPS, Judge.

An indictment charged Garland Williams with armed robbery, burglary, theft by taking, aggravated assault, obstruction of an officer, and other offenses. Williams moved to suppress tangible evidence found in his possession at the time of his arrest and to exclude oral and written statements made by him after his arrest. The trial court denied these motions, and Williams was convicted of all indicted offenses at a bench trial. He contends on appeal that the trial court erred in denying his exclusionary and suppression motions and that the evidence was insufficient to support his conviction of obstruction of an officer, because his arrest was unlawful. We disagree and affirm.

> "When reviewing a trial court's decision on a motion to suppress, this court's responsibility is to ensure that there was a substantial basis for the decision. The evidence is construed most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous. Further, since the trial court sits as the trier of fact, its findings are analogous to a jury verdict and will not be disturbed if there is any evidence to support them."[1]

---

[1] (Citations omitted.) *State v. Burnett*, 220 Ga. App. 133-134 (469 SE2d 324) (1996).

The trial court's application of the law to undisputed facts is subject to de novo appellate review.[2]

Between 10:15 and 10:30 p.m. on September 8, 2003, DeKalb County Police Officer Morales was on routine patrol in the area of a daily and extended stay hotel located at the intersection of Clairmont Road and Interstate 85. Morales testified that this is a high-crime area known to be frequented by prostitutes, drug users, and drug sellers; that there had been many reports of armed robberies and thefts in the area; and that on occasion armed robbery arrest warrants had been served on individuals staying at the hotel.

As Morales was riding through the hotel parking lot, he observed Williams coming out from the side of one of the buildings. According to Morales, Williams took about two steps away from the building while walking at a normal pace, saw his patrol unit, did a quick 180 degree turnaround, and walked back behind the building. Morales then drove his patrol car to the other side of the building, approached Williams, and got his attention by asking him how he was doing. Morales testified that as he was speaking to Williams, he noticed that Williams was carrying a number of wallets in one of his hands even though he was wearing pants with pockets. Suspecting that Williams might be involved in a robbery or theft, Morales exited his patrol car, "grabbed hold of [Williams's] shirt," and asked him for identification. Williams responded that he had left his identification in his room. Morales thereupon asked Williams why he did not have identification in any of the wallets he was carrying. Williams made no verbal response but turned to run. Morales then subdued Williams by wrestling him to the ground. During the struggle, a gun in Williams's possession fell to the ground.

> There are three tiers of police-citizen encounters: (1) communications between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment; (2) brief seizures that must be supported by reasonable suspicion; and (3) full-scale arrests that must be supported by probable cause. [Cit.][3]
> In the first (tier), police officers may approach citizens, ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long as the officers do not detain the citizen or create the impression that the citizen may not leave. The

---

[2] *State v. Ray*, 272 Ga. 450 (2) (531 SE2d 705) (2000).

[3] *Davis v. State*, 237 Ga. App. 890, 891 (517 SE2d 115) (1999).

second tier occurs when the officer actually conducts a brief investigative *Terry* stop of the citizen. In this level, a police officer, even in the absence of probable cause, may stop persons and detain them briefly, when the officer has a particularized and objective basis for suspecting the persons are involved in criminal activity. [Cit.][4]

Under *Terry*,

an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot. While "reasonable suspicion" is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop. The officer must be able to articulate more than an "inchoate and unparticularized suspicion or 'hunch'" of criminal activity.[5]

Whether Williams's evasive behavior upon seeing Officer Morales provided justification for a *Terry* stop is debatable. Although the United States Supreme Court held in *Florida v. Royer*[6] that a person approached by a police officer may decline to listen to any questions put to him and go on his way, the Court in *Illinois v. Wardlow*[7] later distinguished *Royer* in confirming that unprovoked flight in a high-crime area gives rise to reasonable suspicion of criminal activity.[8] In *Wardlow*, the Court concluded that an individual's mere presence in a high-crime area is not enough to support a reasonable, particularized suspicion of criminal activity. But the Court held that a location's characteristics are relevant in determining whether the circumstances are sufficiently suspicious to warrant further investigation, and that nervous evasive behavior is another pertinent factor in determining whether reasonable suspicion exists.

We need not decide the question of whether Williams's evasive actions justified a *Terry* stop, as the trial court was authorized to find

---

[4] *Peters v. State*, 242 Ga. App. 816, 817 (1) (531 SE2d 386) (2000).

[5] (Citations and footnote omitted.) *Illinois v. Wardlow*, 528 U. S. 119, 123-124 (120 SC 673, 145 LE2d 570) (2000).

[6] 460 U. S. 491 (103 SC 1319, 75 LE2d 229) (1983).

[7] Supra.

[8] See *Lee v. State*, 270 Ga. 798, 802-803 (7) (514 SE2d 1) (1999); *Ransom v. State*, 239 Ga. App. 501, 504 (2) (521 SE2d 430) (1999); *State v. Grimes*, 195 Ga. App. 773, 774 (1) (395 SE2d 42) (1990).

on the basis of Morales's testimony that his interaction with Williams did not rise to the level of a tier-two encounter until he exited his patrol car and grabbed Williams by the shirt. Certainly, Morales seized Williams by so restraining him.[9] Morales's testimony further authorized the court to find that, by the time he had initiated the *Terry* stop, he had also observed that Williams was carrying a number of wallets in his hand. That observation, coupled with Williams's evasive action in the high-crime area, provided at least a minimal level of objective justification rendering the stop nonarbitrary.

When Williams fled without responding to the officer's inquiry as to why none of the wallets he was carrying contained any documentation of his identity, Morales was authorized to subdue Williams; probable cause for a full-blown arrest for carrying a concealed weapon and obstruction of an officer then followed.[10]

*Judgment affirmed. Smith, C. J., and Johnson, P. J., concur.*

DECIDED SEPTEMBER 15, 2004.

*Barry M. Hazen*, for appellant.
*Jeffrey H. Brickman, District Attorney, Andrew C. Hall, Assistant District Attorney*, for appellee.

---

[9] See *State v. Causey*, 246 Ga. App. 829, 831 (1) (540 SE2d 696) (2000) ("seizure" within the meaning of Fourth Amendment occurs when, in view of all circumstances surrounding incident, a reasonable person believes he is not free to leave); *Davis v. State*, supra (pursuit constitutes a seizure where there is the application of physical force).

[10] See *Tuggle v. State*, 236 Ga. App. 847, 848-849 (1) (512 SE2d 650) (1999); see generally cases cited at footnote 8, supra.