A04A1257. THE STATE v. GODBOLT.
(606 SE2d 278)

SMITH, Chief Judge.

The State appeals from the trial court's order granting the motion to suppress filed by Christopher Godbolt, on the ground that evidence seized by the police originated out of an illegal arrest. Because we conclude that the trial court misapplied the law to the facts of this case, we reverse.

Along with two codefendants, Godbolt was charged with armed robbery and aggravated assault. Godbolt filed motions in limine to exclude his own statements and the statement of a deceased eyewitness. He also filed a motion to suppress "show-up" identification testimony. These motions were denied by the trial court. The case proceeded to trial, which resulted in a hung jury. The trial court subsequently sua sponte reconsidered its earlier rulings and granted Godbolt's motion to exclude the statement of the deceased eyewitness. Godbolt then filed a motion to exclude his statement made at the scene and again sought exclusion of the victim's show-up identification. He also moved to dismiss the indictment on the same ground. The court denied the motion to dismiss but granted Godbolt's motion to exclude his statement and the show-up identification evidence, on the ground that this evidence derived from an illegal arrest. The State raises no questions on appeal as to the ruling concerning the admissibility of the deceased witness's statement but does contend

that the trial court erred in suppressing the show-up identification testimony and Godbolt's statement. We agree with the State that this evidence was not the product of an illegal arrest.

Evidence presented at trial showed that the victim, a bread truck driver, was parked in front of a convenience store at approximately 6:40 a.m. He saw three men talking with a man whom he recognized as Dock Love. Love was sitting on a bench near the store. After speaking with Love, the three men approached the victim, pulled him from the truck, and robbed him at knifepoint. After they took cash and a cellular telephone from the victim, threatened to stab him, and kicked him while he lay on the ground, the three men ran up North Avenue in Hapeville.

During the hearing on Godbolt's motions and at trial, Officer Charles Stansberry testified that while on patrol at approximately 6:40 a.m. on August 4, 2001, he observed three men running at a fast pace through backyards, jumping a fence, and running on North Avenue. He testified that the men "were separated, staggered" and were running "more between the sidewalk and the houses and the yards." Stansberry observed "one person run across in front of my vehicle . . . and cut through another yard behind [a] building. And then I observed a second person continuing south through the yards and then a third suspect or subject that had come through the back yards right across the path of my vehicle." Stansberry stopped the third man, Godbolt, who was running toward him. Stansberry identified himself as a police officer, drew his gun for safety purposes "since the suspect was running towards me," and instructed Godbolt to stop. He told Godbolt to "hit the ground." Stansberry testified that he "stopped him to find out the reason that these subjects were cutting through yards." Although he testified that he did not "have probable cause to believe that [Godbolt] had committed a crime," Stansberry "had a suspicion that something may have happened since they were cutting through yards and jumping fences." After he stopped Godbolt, Stansberry asked him why he was running, and Godbolt "stated that there had been a fight at the Kwik Pick, but he wasn't involved."

Stansberry testified that during this encounter with Godbolt, Dock Love approached him and stated that he had seen Godbolt and two other people "jump a delivery person at a Kwik Pick." According to Stansberry, Godbolt had been lying on the ground approximately five minutes before Love approached and made this statement, and following Love's statement, Godbolt was handcuffed and detained. Godbolt was then driven to the Kwik Pick by another officer. Stansberry testified that he had a dog and a dog cage in the back of his vehicle, that he did not have seatbelts in the back of the vehicle, and

that he consequently could not transport Godbolt. He told the transporting officer that "he didn't know what exactly he had at that point, but he had three suspects on the run." Stansberry estimated that the Kwik Pick was less than half a mile from the place where he stopped Godbolt. At the Kwik Pick, the victim identified Godbolt as one of his attackers. Godbolt and another suspect were arrested. At the police station, after he was given *Miranda* warnings, Godbolt stated that he and two other men were walking down the street and that one of the other men robbed the victim at the Kwik Pick. Godbolt stated that he ran because he was afraid. This statement was not presented to the jury.

Dock Love died before trial, and it was his statement that the trial court excluded on retrial. After hearing the trial testimony, the trial court found that the issue of the statement's trustworthiness was "problematic." In part, the trial court's written order stated:

> The officer stopped Mr. Godbolt because he had been running through some back yards and had jumped a fence. He had not seen a robbery committed and had not seen any evidence of any crime having been committed. Officer Stansberry testified, "I didn't have any probable cause to believe he had committed a crime." He stopped the defendant, drew his gun and commanded him to hit the ground. Thus, the officer found himself with gun drawn while standing over a man he had captured, but had no idea what he had captured him for. The issue of trustworthiness is compromised by this dilemma. The officer's need for a probable cause to stop this defendant creates a questionable motive.

The court went on to state that during the course of the trial, it became apparent that Love knew the victim and that "[w]hatever biases that existed due to this relationship . . . can not be explored by the defendant at trial due to Mr. Love's unavailability."

Three months after entering this order, the court entered a written order excluding the statement Godbolt made "upon his arrest," as well as the show-up evidence, again stating in its written order that Stansberry "found himself with gun drawn while standing over a man he had captured, but had no idea what he had captured him for." The trial court stated that the detention that occurred between the initial stop and Godbolt's arrest at the Kwik Pick was not a permissible brief detention but that Godbolt was illegally arrested.

On appeal of a trial court's order on a motion to suppress, if the facts are not disputed, "we apply a de novo standard of review to the trial court's application of the law to the facts." (Citation, punctuation and footnote omitted.) *State v. Gooch*, 266 Ga. App. 746 (598 SE2d 341) (2004). Even though the statement of Dock Love may have been

inadmissible at trial, we cannot agree with the trial court's apparent conclusion that at the time of Godbolt's detention, Stansberry simply found himself in a position of having captured a suspect without having a reason for that capture and subsequent detention.

> [A] police officer, even in the absence of probable cause, may stop persons and detain them briefly, when the officer has a particularized and objective basis for suspecting the persons are involved in criminal activity. To stop a citizen, the officer must possess more than a subjective, unparticularized suspicion or hunch. The officer's action must be justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion, and the officer must have some basis from which the court can determine that the detention was neither arbitrary nor harassing. An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity.

(Citation, punctuation and footnote omitted.) *State v. Harris*, 261 Ga. App. 119, 121-122 (581 SE2d 736) (2003). See also *Williams v. State*, 269 Ga. App. 616 (604 SE2d 640) (2004).

Stansberry did not simply stop Godbolt based on mere hunch or caprice, and the fact that he drew his gun did not, in and of itself, render the detention illegal. "An officer may take appropriate self-protective measures when he lawfully confronts an individual and reasonably believes him to be armed or otherwise dangerous to the officer or others. . . . The key question in all cases remains whether the protective measures taken by the officer were reasonable under the circumstances." (Citations and punctuation omitted.) *Edwards v. State*, 165 Ga. App. 527, 528 (301 SE2d 693) (1983). See also *Holsey v. State*, 271 Ga. 856, 861 (6) (524 SE2d 473) (1999).

Stansberry saw three men running rapidly and in a haphazard manner across lawns and jumping over fences at 6:40 a.m. A reasonable and rational inference from these facts was that these men may have been involved in illegal activity. One of those men, Godbolt, was running toward Stansberry, and for his own safety, Stansberry drew his gun, stopped him, and ordered him to the ground. Godbolt himself then provided further information to Stansberry justifying Stansberry's belief that Godbolt may have been involved in criminal activity, when Godbolt stated that a fight had occurred at the Kwik Pick.

Contrary to the conclusion implicit in the trial court's order, Stansberry did not "capture" Godbolt and then look for a crime that Godbolt might have committed. Stansberry had a reasonable, objective, and particularized basis for stopping and briefly detaining

Godbolt. Then, given Godbolt's statement, he had a basis for conducting further investigation into the details of the incident at the Kwik Pick, an incident that resulted in the flight of three men from the scene. The detention was not illegal, and the trial court erred in suppressing evidence obtained during Godbolt's detention and after his arrest.

*Judgment reversed. Johnson, P. J., and Phipps, J., concur.*

DECIDED OCTOBER 27, 2004.

*Paul L. Howard, Jr., District Attorney, Alvera A. Wheeler, Bettieanne C. Hart, Assistant District Attorneys*, for appellant.
*Deborah J. Poole*, for appellee.