## A05A0974. FITZ v. THE STATE.
(622 SE2d 46)

BERNES, Judge.

A Henry County jury convicted James Elwood Fitz, Jr. of one count of burglary. Fitz appeals, contending that (1) the trial court erred by denying his motion to suppress; (2) the trial court erred by admitting similar transactions evidence; (3) the trial court erred by charging the jury on parties to a crime; and (4) he received ineffective assistance of counsel. For the reasons set forth below, we affirm.

1. Fitz contends that the trial court should have granted his motion to suppress. He claims that the officer who made the initial investigative stop of his vehicle had no specific, articulable suspicion that he was engaged in criminal activity. Fitz also contends that even if the initial stop was constitutionally valid, his subsequent questioning and detention by the officer were unreasonable in scope and duration.

In reviewing the denial of a motion to suppress, "the evidence is construed most favorably to uphold the court's findings and judgment. If there is any evidence to support the trial court's findings on disputed facts and credibility, they will not be disturbed unless clearly erroneous." (Citations and punctuation omitted.) *Taylor v. State*, 249 Ga. App. 538 (1) (548 SE2d 662) (2001). We review de novo the trial court's application of the law to undisputed facts. *State v. Mallard*, 246 Ga. App. 357 (541 SE2d 46) (2000).

So viewed, the record reflects that at approximately 5:00 p.m. on June 4, 2003, a Henry County law enforcement officer en route to another call observed an empty white GMC Envoy parked on the side of the road along a wooded area. The vehicle appeared to be abandoned. The officer, who was familiar with the vicinity, believed that the empty vehicle was "out of place" along the wooded area and decided to return and investigate after responding to the other call.

At approximately 6:00 p.m., the officer returned to the wooded area to see whether the GMC Envoy was still there. The empty vehicle was in the same location. As he was getting ready to make a U-turn to better check out the vehicle, the officer observed a man later identified as Fitz suddenly run out of the nearby woods in front of his patrol car. Although it was summer, Fitz was wearing gloves. Fitz ran directly past the officer's patrol car, got into the GMC Envoy, and began to drive off.

Believing that Fitz may have just committed a burglary in a subdivision the officer knew was located on the other side of the woods, the officer activated his emergency equipment and called for back up. Fitz did not immediately come to a stop, instead traveling approximately 200 feet before stopping on the side of the road.

The officer approached Fitz's vehicle, asked Fitz for his driver's license and proof of insurance, and inquired why he had run so quickly out of the woods. Fitz appeared nervous and was sweating and shaking. His arms, legs, and face were covered in scratches. Fitz stated that he had run out of the woods because he had just been in an argument with his wife. He pointed toward the woods, indicating that his home was in that vicinity. However, his driver's license revealed that he did not live in that area. Fitz then received a call from his wife on his cell phone. The officer spoke with Fitz's wife, and she told the officer that her argument with Fitz had been "earlier that day or that morning." After the call, Fitz told the officer that because his wife and he always argued, he was in the area looking at property so that he could build a new home and move out.

Fitz subsequently consented to a search of his vehicle. The search uncovered items later revealed to have come from a home in a nearby subdivision that had been broken into earlier that day.

Under *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968), "[a] police officer may make a momentary detention and investigation based upon specific and articulable facts [of wrongdoing], which must exceed mere inclination, caprice, or harassment." (Citations omitted.) *Smith v. State*, 262 Ga. App. 614, 617 (1) (585 SE2d 888) (2003). "This specific, articulable suspicion must be based on the totality of the circumstances," which can include "the inferences drawn and deductions made by a trained law enforcement officer." (Citation and punctuation omitted.) *State v. Wright*, 221 Ga. App. 202, 204 (3) (470 SE2d 916) (1996). Even if "the conduct justifying the stop [is] ambiguous and susceptible of an innocent explanation," *Illinois v. Wardlow*, 528 U. S. 119, 125 (120 SC 673, 145 LE2d 570) (2000), the officer may temporarily detain the individual and resolve the ambiguity as long as there is "at least a minimal level of objective justification for making the stop" that goes beyond a mere "unparticularized suspicion or hunch." (Citation, punctuation and footnote omitted.) Id. at 123-124.[1] We will not reverse a trial court's ruling on a motion to suppress "[i]n the absence of evidence of record *demanding* a finding

---

[1] As we have explained,

the Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest, to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

(Citations and punctuation omitted.) *Holley v. State*, 157 Ga. App. 863, 865 (2) (278 SE2d 738) (1981).

contrary to the judge's determination." (Punctuation and footnote omitted; emphasis in original.) *State v. Winnie*, 242 Ga. App. 228, 231 (529 SE2d 215) (2000).

Under the totality of the circumstances, we cannot say that the evidence demanded that the trial court grant Fitz's motion to suppress. The presence of an empty vehicle parked for at least an hour in an unusual location that backed up to a residential subdivision, combined with the officer's observation of Fitz darting out of the woods in gloves in summer, created an objectively reasonable inference that Fitz was engaged in some type of illegal activity. In light of what the officer observed, it is clear that he did not stop Fitz based on "mere caprice or a hunch or an inclination." (Citation and punctuation omitted.) *Jones v. State*, 259 Ga. App. 849, 851-852 (578 SE2d 562) (2003).[2]

Our conclusion is supported by *State v. Godbolt*, 270 Ga. App. 190, 193 (606 SE2d 278) (2004), where we held that a police officer who observed a defendant "running rapidly and in a haphazard manner across lawns and jumping over fences" had a reasonable suspicion that the defendant had been "involved in illegal activity." Id. Likewise, our conclusion is consistent with cases holding that the presence of a parked car in a suspicious or odd location, combined with other factors, can provide reasonable suspicion for a brief stop of the vehicle to inquire further. See *Popham v. State*, 214 Ga. App. 775 (449 SE2d 150) (1994); *Howard v. State*, 150 Ga. App. 847 (258 SE2d 652) (1979).

Moreover, "[t]he primary purpose for the exclusionary rule is to deter police misconduct," (citation omitted) *State v. Armstrong*, 223 Ga. App. 350, 352-353 (2) (477 SE2d 635) (1996), and there is no evidence in the record that the officer stopped Fitz's vehicle in order to harass or intimidate Fitz. "No purpose of deterrence would be served by suppressing the evidence found in this case, which was the product of a stop prompted by the officer's legitimate concern for public safety." Id. at 353 (2). Thus, the trial court properly concluded that the officer who stopped Fitz's vehicle had a specific, articulable suspicion justifying the stop.

Fitz cites to several cases that he argues mandate a contrary result. See *Baker v. State*, 256 Ga. App. 75 (567 SE2d 738) (2002);

---

[2] Fitz emphasizes that the officer testified that he "was curious to know . . . why [Fitz] just ran out of the woods wearing gloves" and that he had a "hunch" that Fitz had done something wrong because the situation seemed "a little suspicious." The fact that an officer, a nonlawyer, may use words like "curiosity" or "hunch" to describe the basis for an investigative stop does not control our inquiry. It is the objective facts revealed by the record to have been known to the officer at the time of the investigative stop that establish whether he had reasonable suspicion, not his post-hoc characterizations or opinions concerning those facts. See *Cole v. State*, 254 Ga. App. 424, 426 (2) (562 SE2d 720) (2002).

*Smith v. State*, 245 Ga. App. 613 (538 SE2d 517) (2000); *Attaway v. State*, 236 Ga. App. 307 (511 SE2d 635) (1999). But Fitz "offers no argument and cites to no case wherein *all* of the indicia present in this case — taken together — would be insufficient for a reasonable officer to believe [Fitz] was engaged in wrongdoing." (Emphasis in original.) *Evans v. State*, 262 Ga. App. 712, 717 (1) (b) (586 SE2d 400) (2003). In the cases cited by Fitz, the officers merely observed individuals driving vehicles in a manner entirely consistent with the traffic laws and without posing any public safety risk.[3] Here, the officer observed additional facts, including the presence of an empty vehicle for an extended period in an odd location near a residential subdivision in conjunction with the incongruous sight of Fitz, in gloves in summer, running rapidly out of the woods and toward the vehicle. These facts make the present action more akin to cases like *Godbolt*, 270 Ga. App. 190, *Popham*, 214 Ga. App. 775, and *Howard*, 150 Ga. App. 847, where we held that the officer had reasonable suspicion, as discussed above.

Similarly, the trial court did not err in concluding that Fitz's subsequent detention and questioning by the officer were reasonable in scope and duration. "When effecting [an investigative] stop, an officer has certain restrictions on him regarding the scope of the detention. The scope of the detention must be carefully tailored to its underlying justification." (Citation and punctuation omitted.) *Anderson v. State*, 261 Ga. App. 657, 658 (583 SE2d 511) (2003). The record reflects that the officer's questions to Fitz directly related to his reason for stopping the vehicle, namely, his suspicion that Fitz had committed a burglary. Furthermore, Fitz's "unusually nervous" demeanor, scratched up appearance, and odd and conflicting answers to the officer's questions provided the officer with reasonable grounds to continue the detention and investigate further. Id. at 659. See also *Bell v. State*, 248 Ga. App. 254, 257 (546 SE2d 34) (2001).

Because the stop of Fitz's vehicle and his questioning and detention were proper, Fitz's subsequent consent to the search of his vehicle likewise was valid. *McDaniel v. State*, 227 Ga. App. 364, 366 (2) (489 SE2d 112) (1997). Therefore, the trial court committed no error in denying Fitz's motion to suppress.

---

[3] See *Baker*, 256 Ga. App. 75 (no reasonable suspicion to stop vehicle when only basis for stop was that officer observed vehicle turned down poorly lit alleyway that led to used car lot which had experienced numerous thefts); *Smith*, 245 Ga. App. 613 (no reasonable suspicion when only basis for stop was that officer observed vehicle parked in dimly lit parking lot of apartment complex pull away from complex as officer's patrol car approached); *Attaway*, 236 Ga. App. 307 (no reasonable suspicion when only basis for stop was that officer observed vehicle circling subdivision several times late at night).

2. Fitz contends that the trial court erred on several grounds in allowing the State to introduce evidence of his three prior burglary offenses. We discuss below each of Fitz's alleged grounds for reversal.

(a) Fitz argues that admission of the three prior burglaries was improper because he did not receive adequate notice of the State's intent to introduce similar transaction evidence. Specifically, he contends that the State's written notice under Uniform Superior Court Rule 31.3 (B) did not list two of the victims of the prior burglaries who later testified at trial and did not have attached to it copies of the indictments and guilty pleas for the prior burglaries. Fitz also contends that he never received notice prior to trial that the State planned to introduce the prior burglaries for the specific purpose of proving bent of mind.

Rule 31.3 (B) requires that the notice provided by the State

shall be in writing, served upon the defendant's counsel, and shall state the transaction, date, county, and the name(s) of the victim(s) for each similar transaction or occurrence sought to be introduced. Copies of accusations or indictments, if any, and guilty pleas or verdicts, if any, shall be attached to the notice.[4]

"The purpose of Rule 31.3 is to provide a criminal defendant with fair and adequate notice of the State's intention to utilize evidence of prior similar transactions so that questions as to the admissibility of such evidence can be resolved before trial." (Citation and punctuation omitted.) *James v. State*, 209 Ga. App. 182 (1) (433 SE2d 132) (1993). Thus, even if the State violates the letter of the rule, the State can avoid the consequences by showing that the defendant was not harmed because he "had the requisite notice in spite of the State's failure." *Todd v. State*, 189 Ga. App. 538, 539 (1) (376 SE2d 917) (1988).

Although the State's Rule 31.3 (B) notice failed to list two of the victims to the prior burglaries who later testified at trial, the State disclosed its intent to call them as witnesses during the pre-trial Rule 31.3 (B) hearing. Likewise, although omitted from the notice, the State disclosed during the hearing that it wanted to introduce the prior offenses to prove bent of mind. Thus, Fitz "had the requisite notice to satisfy the purpose of the rule" and was not harmed by the

---

[4] Although Rule 31.3 (B) does not explicitly require that the written notice also state the specific purpose for introducing the similar transaction evidence, we have held that the rationale behind the rule justifies requiring the State to articulate its specific purpose in its notice. *Rodriguez v. State*, 211 Ga. App. 256, 258 (4) (a) (439 SE2d 510) (1993).

omissions. *James*, 209 Ga. App. at 183 (1). See also *Allen v. State*, 242 Ga. App. 367, 368-369 (2) (533 SE2d 401) (2000).[5]

Fitz is simply wrong in his assertion that the State's notice did not have the required criminal records attached to it. The three prior burglaries were charged as separate counts in the same indictment. Attached to the State's notice was the indictment containing his plea of guilty on all three counts.

(b) Fitz contends that the State failed to meet the three-prong test enunciated in *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991), for introducing evidence of the prior burglaries. Under *Williams*, the State may introduce evidence of prior offenses if a pre-trial hearing is held pursuant to Rule 31.3 (B) and if the State shows that:

> (1) it seeks to introduce evidence of an independent crime or offense for an appropriate purpose which has been deemed to be an exception to the general rule of inadmissibility; (2) the evidence is sufficient to establish that the accused committed the independent offense; and (3) there is sufficient similarity between the independent offense and the charged crime so that proof of the former tends to prove the latter.

(Citation omitted.) *Little v. State*, 202 Ga. App. 7 (1) (413 SE2d 496) (1991). A "trial court's decision to admit prior similar transaction evidence lies within its sound discretion and, absent an abuse thereof, will not be disturbed on appeal." (Citation omitted.) *Collins v. State*, 242 Ga. App. 450, 453 (2) (529 SE2d 412) (2000). We conclude that the trial court acted within its discretion in finding that the State made all three showings with respect to the prior burglaries.

First, the record reflects that Fitz's prior burglary convictions were admitted for the limited purpose of showing Fitz's bent of mind, as the trial court carefully instructed the jury prior to its admission into evidence and as part of the charge to the jury.[6] As such, the prior convictions were admitted for a "substantially relevant purpose other than to show a probability that [Fitz] committed the crime for which he is on trial because he is a [person] of criminal character." (Citation

---

[5] Fitz also argues that he received insufficient notice from the trial court that the State would be permitted to use the prior burglaries to prove bent of mind. However, at the Rule 31.3 (B) hearing, the trial court ruled that the State would be permitted to introduce the prior burglaries for that purpose.

[6] At the Rule 31.3 (B) hearing, the State argued that it also should be able to introduce the prior burglary convictions to prove identity and course of conduct. However, the trial court instructed the jury that it could consider the convictions only for the purpose of showing bent of mind.

omitted.) *Painter v. State*, 219 Ga. App. 290, 291 (2) (465 SE2d 290) (1995). See also *Masters v. State*, 186 Ga. App. 795, 797 (2) (368 SE2d 557) (1988).

Second, the State presented sufficient evidence that Fitz committed the prior burglaries. The State introduced a certified copy of the indictment containing his guilty plea to the burglaries that clearly identified Fitz as the perpetrator. Such proof is sufficient to establish the second prong of the *Williams* test. *Rakestraw v. State*, 155 Ga. App. 563, 564 (1) (271 SE2d 696) (1980). See also *Patterson v. State*, 259 Ga. App. 630, 632 (2) (577 SE2d 850) (2003).

Third, there was sufficient similarity between the three prior crimes to which Fitz pled guilty and the charged offense to warrant their admission. Like the charged offense, all three prior burglaries to which Fitz pled guilty occurred during the day and were burglaries of residential, single family homes with ranch style layouts located in Henry County. All the burglaries were committed for the purpose of theft. Furthermore, as with the charged offense, two of the prior burglaries involved the theft of financial documents, and two of the prior burglaries involved entry through a garage.

> The admission of other criminal acts by the defendant does not turn on the basis of the number of similarities between the criminal acts alone, particularly where, as here, evidence of independent crimes is introduced to show bent of mind. *Raulerson v. State*, 268 Ga. 623, 631 (8) (491 SE2d 791) [(1997)]; accord *Jones v. State*, 226 Ga. App. 721, 722-723 (1) (487 SE2d 618) [(1997)] ("When similar transaction evidence is being introduced to prove motive, intent, or bent of mind, it requires a lesser degree of similarity to meet the test of admissibility than when such evidence is being introduced to prove identity.").

*Collins*, 242 Ga. App. at 453 (2). See also *Masters*, 186 Ga. App. at 797 (2).[7] Thus, the trial court acted within the scope of its discretion in concluding that the similarities were sufficient to authorize the admission of the prior burglaries.

(c) Finally, Fitz asserts that the trial court erred in its instructions to the jury prior to admission of the similar transactions

---

[7] Fitz contends that even if the introduction of the prior burglaries satisfied the *Williams* test, the evidence was unfairly prejudicial. The trial court was authorized to conclude that the relevance of the prior burglaries to proving state of mind was outweighed by their prejudicial effect. See *Clark v. State*, 272 Ga. App. 89, 91 (611 SE2d 741) (2005).

evidence and in its jury charge concerning the same. We have reviewed the record and find no error in the instructions or charge to the jury.

3. Fitz complains that there was insufficient evidence to authorize the trial court to charge the jury on the circumstances under which a person can be considered a party to a crime.

> It is well established that an instruction is not inapplicable where there is any evidence, however slight, on which to predicate it. To justify a charge on a given subject, it is not necessary there should be compelling evidence giving rise to that point; it is enough if there be something from which a legitimate process of reasoning can be drawn from it by the jury.

(Citations and punctuation omitted.) *Garnett v. State*, 167 Ga. App. 792, 793 (307 SE2d 692) (1983).

There was ample circumstantial evidence of Fitz's direct participation in the burglary to warrant the portion of the charge dealing with direct criminal liability. Likewise, the trial court was authorized to instruct the jury on aiding and abetting liability as part of its charge on parties to a crime. Fitz testified that although the stolen items were found in his car, the items were placed there by one of his acquaintances whom he had spoken with on the phone several times earlier that day. Fitz also testified that he argued with that individual outside the home that was burglarized. Given the circumstantial evidence supporting Fitz's participation in the burglary, there was at least some basis for the jury to reason that even if Fitz's acquaintance was involved in the burglary, Fitz was his accomplice. Thus, the jury charge was appropriate. See *King v. State*, 168 Ga. App. 123 (308 SE2d 240) (1983).

4. Fitz contends that his trial counsel provided him with ineffective assistance of counsel. Under *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), success on an ineffective assistance of counsel claim requires a two-prong showing:

> [A] criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different.

(Citations omitted.) *Robinson v. State*, 278 Ga. 31, 34 (3) (597 SE2d 386) (2004). Because Georgia does not recognize the cumulative error

doctrine, we will discuss each claim of ineffective assistance separately. *Howren v. State*, 271 Ga. App. 55, 58 (5) (608 SE2d 653) (2004).

(a) Fitz contends that his trial counsel was ineffective because he failed to adequately meet and communicate with him throughout the pendency of the case, including failing to meet with Fitz in order to prepare him to testify at trial. However, trial counsel contradicted these assertions in his testimony at the new trial hearing by recalling several occasions in which he met Fitz and discussed trial strategy and Fitz's possible testimony. The trial court was entitled to resolve the factual conflict and credit the testimony of trial counsel over that of Fitz. *Jividen v. State*, 256 Ga. App. 642, 645 (1) (b) (569 SE2d 589) (2002). Accordingly, the trial court did not err in rejecting these claims.

(b) Fitz argues that his trial counsel was ineffective because he did not interview one potential witness until the day of trial with the district attorney present, and failed to interview several other witnesses altogether. However, even assuming that trial counsel's performance was deficient in this regard, Fitz has made no showing that he was prejudiced as a result. See *Ford v. State*, 272 Ga. App. 798 (613 SE2d 234) (2005); *Patterson v. State*, 272 Ga. App. 675, 679 (5) (a) (613 SE2d 200) (2005).

(c) Fitz contends that his trial counsel was ineffective because he failed to file a motion in limine opposing the introduction of the prior burglary offenses. "Whether to file pretrial motions and how to argue the motions are strategic decisions, and when reasonable in the context of the case, do not constitute error." (Footnote omitted.) *Pitts v. State*, 272 Ga. App. 182, 188-189 (4) (a) (612 SE2d 1) (2005). While trial counsel did not file a motion in limine, he challenged the similar transaction evidence during the Rule 31.3 (B) hearing and later objected to its introduction at trial. Such an approach was a matter of strategy and did not constitute ineffective assistance. See id.

Finally, Fitz makes several allegations of ineffective assistance that are predicated on his prior enumerations of error. "[S]ince all of the enumerations of error above are meritless . . . , they provide no basis for reversal under the guise of 'ineffective assistance of counsel.'" *Holder v. State*, 242 Ga. App. 479, 484 (8), n. 2 (529 SE2d 907) (2000).

5. Fitz raises a fifth enumeration of error, but it is predicated on the exact same claims discussed above. Hence, our rejection of those claims renders his fifth enumeration of error moot.

*Judgment affirmed. Blackburn, P. J., and Miller, J., concur.*

DECIDED OCTOBER 13, 2005.

*Harrison & Harrison, Stephen P. Harrison, Jacqualine Magistro-Hyde*, for appellant.

*Tommy K. Floyd, District Attorney, Atha H. Pryor, Assistant District Attorney*, for appellee.