## A10A0753. ODOM v. THE STATE.

(697 SE2d 289)

SMITH, Presiding Judge.

A jury found Orenda Odom guilty on one count each of aggravated assault upon a police officer, obstruction, possession of cocaine, possession of marijuana, and carrying a concealed weapon, and three counts of possession of a firearm during the commission of a crime. Following the denial of his motion for new trial, Odom appeals, asserting that he was denied effective assistance of counsel on several grounds. We affirm.

Construing the evidence as we must in favor of the verdict, the record reveals that around 11:00 p.m., plain clothed and uniformed officers were en route to a convenience store because of complaints of loitering and prowling in the area. When officers arrived, they noticed a man loitering in the front of the store. While three uniformed officers approached the man, a fourth officer, Officer Pippen, wearing plain clothes and a badge around his neck, observed Odom come around the corner of the building. Pippen testified that when Odom saw the other uniformed officers, he pulled his baseball cap down over his eyes, "[h]e had his left hand stuck in his pocket, and he motioned with his mouth. I could read his lips, oh, sh**. And he turned. And as he turned, before I could say anything to him, he was gone." Pippen testified further that he followed Odom and "yelled to him Savannah Chatham Metro Police, sir, come here. [Odom] turned around, and I know he made eye contact. He looked right at me. Saw the badge, gone. Took off running."

Pippen chased Odom through some apartment buildings while yelling for Odom to "stop." During the chase and as Odom was nearing a fence, Odom pulled out a "stainless steel weapon" and pointed it at Pippen. Pippen ordered Odom to put down the weapon. He testified that Odom was "shaking, and he's shaking. I don't know if he's trying to pull the trigger. I don't know what." Odom then tossed the gun aside and fled toward a wood line. Pippen landed on top of Odom who was "squirming around. . . . And then he's digging in the dirt with his left hand. He's just digging. I'm trying to hold him, and the whole time I'm yelling stop resisting, stop resisting." At

that moment, a second officer arrived and assisted in subduing and handcuffing Odom. The loaded and cocked gun was located inches from where Pippen saw Odom toss it. Officers also discovered some crack cocaine in the spot where Odom was digging in the ground, and marijuana in a place where Odom's hat fell during the chase.

Odom alleges five instances of ineffective assistance of counsel. We address each of these claims in turn.

To succeed on an ineffective assistance claim, a criminal defendant must demonstrate both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. *Strickland v. Washington*, 466 U. S. 668, 687-688 (III) (104 SC 2052, 80 LE2d 674) (1984). "There is a strong presumption that the performance of trial counsel falls within the wide range of reasonable professional assistance. The reasonableness of the conduct is viewed at the time of trial and under the circumstances of the case." (Citations and punctuation omitted.) *Williams v. State*, 277 Ga. 853, 857 (6) (596 SE2d 597) (2004). "If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong." (Citations and punctuation omitted.) *Vaughn v. State*, 301 Ga. App. 55, 60 (5) (686 SE2d 847) (2009). In reviewing the trial court's decision, "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Citation and punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

1. Odom alleges that trial counsel should have objected to statements made by the prosecutor in opening and closing arguments. He contends that the statements commented on his failure to testify. In opening statements, the prosecutor commented: "And in this instance, ladies and gentlemen, for much of what unfolded that night, the only two people who have information about it are Officer Pippen and Mr. Odom. Okay. So you are going to hear from Officer Pippen about what happened out there." In closing, the prosecutor stated:

> The means and opportunity for knowing the facts to which they testify. And again, I pointed this out in opening. He's the only one that was out there other than Mr. Odom when the gun is pointed at him. And he's told you what happened. He has the best means and the best opportunity to know that about which he's testifying. He's it. He's it other than Mr. Odom.

Following the hearing on the motion for new trial, the court ruled

YALE LAW LIBRARY

"Even though the inference is that the jury would not hear from defendant, such a comment by the prosecutor is not improper."

> In order for these remarks to constitute prosecutorial misconduct, there must be a finding that the prosecutor's manifest intent was to comment on [the defendant's] failure to testify or that the jury would naturally and necessarily understand the remarks as a comment on [the defendant's] silence.

(Citations and punctuation omitted.) *Lampley v. State*, 284 Ga. 37, 38 (2) (a) (663 SE2d 184) (2008). We have held that statements similar to the statements made by the prosecutor here "were but a small part of a summary of the evidence best understood as conceding the ambiguities therein and were unlikely to be interpreted as comments on [the defendant's] failure to testify." (Citation and punctuation omitted.) Id. (prosecutor stated that only three persons knew what happened, the defendant, the victim, and an eyewitness); see *Havron v. State*, 234 Ga. App. 413, 414-415 (2) (506 SE2d 421) (1998). Odom's claim of ineffective counsel on this ground is therefore without merit.

2. Odom contends that trial counsel should have objected to the testimony of the crime scene investigator that a partial latent print on the handgun could have been Odom's, even though the investigator had also testified that the prints were insufficient to make an identification. He argues that counsel should have objected that the testimony was improper because it called for speculation, and that the testimony gave the jury the impression that the latent print on the gun was his. Although trial counsel stated that he "[s]hould have made an objection for several reasons," the trial court ruled that the investigator "qualified as an expert in fingerprint comparisons and was asked for an opinion. This is permissible evidence."

The investigator testified that the partial latent fingerprints found on the gun were insufficient "to make an identification with anyone." When asked whether the partial prints could still belong to Odom, he responded, "Yes, they could." Immediately following this statement, the investigator again explained that he "could not affect a match."

By stating that the fingerprints were insufficient to make a match with anyone, the investigator in essence informed the jury that the fingerprints could have been made by anyone, including Odom. In light of the investigator's testimony as a whole, we cannot say that trial counsel performed deficiently by failing to object here, or that the outcome would have been different had counsel done so. See, e.g., *Brown v. State*, 275 Ga. App. 99, 105-106 (4) (a) (619 SE2d

789) (2005) (no ineffective assistance where counsel failed to object to single question and answer which took place in long series of questions and answers); *McKeever v. State*, 118 Ga. App. 386, 389 (4) (163 SE2d 919) (1968) (testimony as a whole shows basis of witness's conclusion).

3. (a) Odom argues that trial counsel should have objected to the prosecutor's statements during closing argument that he claimed suggested that he would have shot the officer if he knew how to disengage the safety on the gun. He argues that the statement only inflamed the jury as there was no evidence that he attempted to disengage the safety. The prosecutor stated: "[Pippen] might not have come off that shift that night had [Odom] known how to get the gun off the safety. Or maybe he just got nervous. I don't know." The evidence showed that the gun was loaded with its hammer back and that an officer had to unload it for safety. Although Odom argues that there was no evidence that he attempted to disengage the safety on the gun, Pippen testified that when Odom pointed the gun at him, Odom was "shaking, and he's shaking. I don't know if he's trying to pull the trigger. I don't know what."

"[A] prosecutor may argue deductions which are illogical, absurd or even unreasonable, so long as there is evidence from which such deductions may be drawn." (Citations omitted.) *James v. State*, 204 Ga. App. 723, 724 (1) (420 SE2d 383) (1992). In this instance, the prosecutor commented on two possibilities for Odom's conduct while he pointed the gun at Pippen: he implied that Odom was attempting to disengage the safety, or that Odom was possibly nervous. Because there was some evidence from which these deductions could be drawn, we cannot say that trial counsel should have objected to the prosecutor's statements. See id.

(b) Odom argues further that counsel should have objected to the prosecutor's statement during closing that the incident took place in a residential area known as Yamacraw Village and that it could have endangered innocent women and children. During closing statements, when the prosecutor made reference to Yamacraw Village, the court warned her to "stay away from specifics about other places that has [sic] not been put in evidence." Immediately following this admonition, the prosecutor made a similar statement about Odom taking "violence into Yamacraw."

Although the court warned the prosecutor to refrain from referring to Yamacraw Village, Odom has not shown how the outcome of the trial would have been different had counsel objected to the second reference made by the prosecutor. See, e.g., *Jackson v. State*, 282 Ga. 494, 498 (3) (651 SE2d 702) (2007). Moreover, the trial court instructed the jury that the evidence does not include opening and closing statements of the attorneys. See id.; *Carrie v. State*, 298

YALE LAW LIBRARY

Ga. App. 55, 63 (6) (679 SE2d 30) (2009). Accordingly, the trial court did not err in denying Odom's claim of ineffectiveness of counsel on this ground.

4. Odom contends that trial counsel was ineffective for failing to object to a witness's reference to marijuana. The witness was testifying about a similar transaction in which Odom was charged with possession of a concealed weapon. The witness stated when he stopped a vehicle in which Odom was a passenger, he smelled the odor of marijuana in the vehicle and his drug dog alerted to the presence of drugs, both of which caused him to conclude "that at one point or another there was illegal marijuana in that vehicle and probably smoked in that vehicle." Odom argues that since he was not charged with possessing marijuana in that case, this testimony placed his character in issue.[1]

The witness also testified that there were four individuals in the vehicle including Odom and that none of them was charged with marijuana possession. Even if this testimony incidentally placed Odom's character in issue, "[a]ll circumstances with an accused's arrest are admissible if they are shown to be relevant. This is so even if the evidence incidentally puts the accused's character in issue." (Citations omitted.) *Sweet v. State*, 278 Ga. 320, 325 (7) (602 SE2d 603) (2004). Therefore, any challenge to this testimony would have failed. See id.

5. Odom contends that trial counsel was ineffective for failing to file a motion to suppress. "When trial counsel's failure to file a motion to suppress is the basis for a claim of ineffective assistance, the defendant must make a strong showing that the damaging evidence would have been suppressed had counsel made the motion." (Citation omitted.) *Richardson v. State*, 276 Ga. 548, 553 (3) (580 SE2d 224) (2003). Odom argues that Pippen's encounter with him was "unsupported by articulable facts of criminal conduct."

> There are three tiers of police-citizen encounters: (1) communications between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment; (2) brief seizures that must be supported by reasonable suspicion; and (3) full-scale arrests that must be supported by probable cause.
>
> In the first (tier), police officers may approach citizens, ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long as the officers do not detain the citizen or

---

[1] We note that trial counsel elicited some of the complained-of testimony.

create the impression that the citizen may not leave. The second tier occurs when the officer actually conducts a brief investigative *Terry* stop of the citizen. In this level, a police officer, even in the absence of probable cause, may stop persons and detain them briefly, when the officer has a particularized and objective basis for suspecting the persons are involved in criminal activity.

(Citations, punctuation and footnotes omitted.) *Williams v. State*, 269 Ga. App. 616, 617-618 (604 SE2d 640) (2004).

The encounter in this case was a second-tier encounter. Pippen followed Odom after he walked back around the building and then ordered Odom to "come here" and then to "stop." See *Brown v. State*, 301 Ga. App. 82, 85 (686 SE2d 793) (2009) (order to suspect to remove hands from pockets established second-tier encounter). Therefore, Pippen was required to have had a particularized and objective basis for suspecting Odom was involved in criminal activity. Id. The evidence showed that Odom was in a high-crime area plagued with loitering and prowling. He walked around from the side of the convenience store and upon seeing officers approach another person, mouthed "oh, sh\*\*," pulled down his cap so as to hide his face, put his hand in his pocket, and walked quickly away and back around the side of the building. When Pippen shouted to Odom, he fled. The officer testified that Odom exhibited suspicious behavior and that he was concerned that Odom had a gun by the way he immediately put his hand in his pocket upon seeing the other officers.

"[A] location's characteristics are relevant in determining whether the circumstances are sufficiently suspicious to warrant further investigation, and . . . nervous evasive behavior is another pertinent factor in determining whether reasonable suspicion exists." (Citation omitted.) *Williams*, supra, 269 Ga. App. at 618. Under the totality of circumstances here, Odom's actions supported a reasonable, particularized suspicion that he was involved in criminal activity. See, e.g., id. at 618-619.

Odom has failed to show that a motion to suppress would have been granted. He therefore cannot show that the failure to file such a motion constituted deficient performance by trial counsel. See *Sweet*, supra, 278 Ga. at 323 (1).

*Judgment affirmed. Mikell and Adams, JJ., concur.*

DECIDED JUNE 25, 2010 —

*Davis Cohen*, for appellant.

*Larry Chisolm, District Attorney, Isabel M. Pauley, Assistant District Attorney*, for appellee.